RIVERSIDE TRUST CO., Limited, v. EAST RIVERSIDE WATER CO.

(Circuit Court of Appeals, Ninth Circuit.   October 4, 1909.)

No. 1.707.

WATERS AND WATER COURSES (§ 254*)—CONTRACTS FOR SALE OF WATER—CONSTRUCTION.

The owner of certain lands and water rights constructed a canal to carry the waters from his land to lower lands, and entered into contracts with the owners of such lands by which he sold and conveyed to each a certain quantity of water, measured at the canal. The contracts provided that "it is understood and agreed * * * that water as above stipulated has been actually delivered to the vendee, and that said delivery and this conveyance are accepted by vendee in full satisfaction of all obligations of vendor to vendee." All of them also provided, in effect, that "vendee hereby covenants and agrees to bear his proportionate share of taxes and all expenses of maintaining and operating said canal system and all water sources and water rights and structures that may be connected therewith." *Held*, that such contracts must be construed to require the vendor to furnish continuously the stipulated quantity of water, and the covenants of the vendees to bear a proportionate share of the expenses related to the expenses of delivery only, and did not bind them to contribute to the expense of producing the water, or procuring additional sources of supply, when by reason of drouth the original supply became inadequate to fill the contracts.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 311; Dec. Dig. § 254.*]

In Error to the Circuit Court of the United States for the Southern Division of the Southern District of California.

Action by the Riverside Trust Company, Limited, against the East Riverside Water Company. Judgment for defendant on demurrer, and plaintiff brings error. Affirmed.

The plaintiff in error filed a complaint containing 31 separate counts on an equal number of separate contracts to recover certain expenses incurred by it in furnishing water to the defendant in error. To review the judgment of the court below, sustaining a demurrer to the complaint and each count thereof for want of facts sufficient to constitute a cause of action, the present writ of error was sued out. The plaintiff in error, which will be designated the plaintiff in this opinion, is the successor in interest of one Matthew Gage, who, between the years 1884 and 1890, executed the 31 several contracts which are the subject of the action. Gage was the owner of certain lands and water rights, and before the contracts were made was engaged in constructing a canal to carry the waters from the lands which he owned to lower lands, to the owners of which he desired to sell water rights, together with easements in the canal for the delivery of the water. On March 11, 1890, he conveyed the canal and the sources of the water to the plaintiff, and the plaintiff took the same, subject to the terms and conditions of the said contracts, and assumed and agreed to perform Gage's obligations therein expressed. Prior to January 1, 1890, the defendant in error, herein to be designated the defendant, succeeded to all the rights so granted by Gage in the contracts above referred to. The complaint alleges that prior to January 1, 1900, the water was derived from the sources referred to in the Gage contracts, and was supplied thereunder from living and running water in a stream and from flowing artesian wells, but that thereafter, and from that date to the commencement of the action, by reason of the extreme, unusual, and extraordinarily dry seasons and lack of rainfall, and from climatic and natural causes, and without fault on the plaintiff's part, it was scarce, low, depleted, and insufficient, and much less than the usual and

ordinary supply, and much less than at the times of the execution of the respective contracts, and that many of the flowing artesian wells ceased to flow, and that all the artesian wells, by reason of such conditions, became vastly depleted, and a water famine was imminent; that it became necessary, in order to overcome the effect of said dry seasons and lack of rainfall, to construct, bore, and establish other and additional artesian and other wells to get water into said canal system and supply, and it became necessary to purchase, construct, install, operate, and maintain pumping plants to secure and raise water from wells which had ceased to flow and did not flow to the surface. It is for the amount of such expenditures, made for the purchase and installing of pumping plants and the operation and maintenance of the same, that the action was brought; the plaintiff demanding of the defendant its proportion of such expenses, which proportion the defendant had refused to pay.

The contracts are made exhibits to the complaint. In those contracts the obligations of the parties of the second part are not expressed in uniform terms. In the first three, Gage agreed to construct a canal for irrigation and domestic use from a point on the Arroyo Tequesquite to the west boundary of Carit's land according to a designated survey, or to any other point where the party of the first part shall obtain a permanent and sufficient supply of water, and deliver the same to the party of the second part at the canal upon the basis of one inch to five acres of land, to be measured under a four-inch pressure. The party of the second part agreed to pay a certain sum in gross therefor, and further covenanted as follows: "Upon completion of the canal, the repairs and all expenses shall be done by parties owning the land, with the right of water from the canal in proportion as hereinbefore mentioned, from the date that water is ready to be delivered from said canal by party of the first part."

The fourth contract in point of time, and the one which provides for the greatest supply of water, was that which was made between Gage and the Iowa Land & Improvement Company on August 27, 1885. This agreement binds Gage to construct a canal for irrigation, "said canal to be supplied with water from the springs and water rights and from the flow of artesian wells bored and to be bored" on certain designated premises, and binds him to deliver water to the party of the second part, measured at the canal under a 4-inch pressure, the canal to be of sufficient capacity to carry at least 500 inches of water. It provides that the canal may be enlarged by Gage at any time within five years for the purpose of conveying additional water; that within two years from August 1, 1886, the canal shall be cemented on the bottom and sides at Gage's expense; that all distributing ditches required for irrigating its own lands shall be built by the party of the second part. The party of the second part agreed, upon the delivery by Gage of 335 inches of water, measured August 1, 1886, at the canal, under a 4-inch pressure, for the use of its lands, to pay therefor the sum of $167,500, of which $87,500 was acknowledged to have been paid, and the remainder was to be paid upon the completion of the canal to the south line of section 5, and the delivery of the 335 inches of water under a 4-inch pressure thereof, "together with a good title, free from all incumbrance, to said water, water courses, artesian wells, springs, and water rights"; and it was provided that the canal should be held in ownership by the party of the second part in proportion as the number of inches owned by it bears to the total number of inches which should be delivered from said canal when the final developments of water should have been made by Gage. It was distinctly understood that the party of the first part reserved the right to develop and procure water in addition to the 335 inches aforesaid by means of artesian wells and otherwise, and to convey the same in said canal for the use of his own and other lands. The obligation of the party of the second part as to the payment of expenses is as follows: "From the time of delivery of said water by party of the second part, it shall bear its proportionate share of the running expenses of said canal, but not for enlarging or cementing thereof." On November 10, 1886, Gage executed a deed to the defendant, which had become the successor in interest of the Iowa Land & Improvement Company, conveying a water right in the Gage canal system in accordance with the terms of the contract. In the deed it was recited as follows: "Vendee hereby covenants and agrees to bear his proportionate

share of taxes and all expenses of maintaining and operating said canal system, and all water sources and water rights and structures that may be connected therewith, and to pay the same monthly or whenever the same shall be demanded."

The other contracts were substantially the same as the contract with the Iowa Land & Improvement Company, excepting that 13 thereof were made for the supply of water in small quantities, ranging from four-tenths of an inch to 18 inches, aggregating 94.2 inches, and bearing dates between November 10, 1886, and March 5, 1888, in which contracts the obligation of the parties of the second part to pay expenses is thus expressed: "Vendee hereby covenants and agrees to bear his proportionate share of taxes and all expenses of maintaining and operating said canal system, and all water sources and water rights and structures that may be connected therewith"—and all of them contained the following provision: "It is understood and agreed, and said understanding and agreement are indicated by the acceptance of this conveyance, that water as above stipulated has been actually delivered to vendee, and that said delivery and this conveyance are accepted by vendee in full satisfaction of all obligations of vendor to vendee, his heirs and assigns."

John G. North and William J. Hunsaker, for plaintiff in error.

Collier & Carnahan, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The allegations of the complaint must be construed, and the rights of the parties as to the subject-matter of the action must be determined, in the light of the contracts which were made between Gage and the respective parties of the second part thereto. The covenants upon the part of the parties of the second part in the 13 contracts last referred to in the foregoing statement, standing by themselves, and unaffected by the other provisions of the instruments in which they are contained, might be said to be sufficiently broad and inclusive to sustain the plaintiff's causes of action thereon. But, in determining their force and effect, we must not ignore the circumstances under which the contracts were entered into, and especially the subject of the grants and the covenants on the part of the grantor. Running all through these and all the contracts, and controlling the construction of the grantee's covenants, is the fact that there is in each a conveyance by the grantor of a certain designated supply of water, and there is an acknowledgment by the grantee, indicated by his acceptance of the conveyance, that the water as stipulated therein had been actually delivered to him, and that such delivery and the conveyance are accepted by him in full satisfaction of all obligations of the grantor to him, his heirs and assigns. This indicates that the grantor had covenanted to deliver continuously to the grantee the quantity of water so granted, and the covenants so made by the grantee to pay a proportionate share of the expenses must be deemed to be covenants to pay a share of the expenses of the delivery only of that which had been granted, the actual delivery of which the grantee had acknowledged, and not a covenant to contribute to the expenses of producing that which the grantor had granted.

This construction of the covenants of the grantees is even more clearly indicated in the other contracts and conveyances between Gage and the predecessors in interest of the defendant. It was therein mu-

tually agreed that Gage should construct a canal, for the purpose of irrigation, from a designated point or from any other point where he might obtain "a permanent and sufficient supply of water"; that the canal was to be supplied with water from the springs and water rights and from the flow of artesian wells bored and to be bored on certain described lands belonging to Gage; and that he was to deliver to the grantor in each case a specified quantity of water, measured at the canal. The consideration in each instance was to be paid upon the delivery of the water, and was to be a sum in gross in full payment for a perpetual supply thereof. In brief, the terms of the contracts import that upon Gage rested the burden of producing the water and causing the same to flow upon the surface, thence to be turned into a canal and delivered continuously and permanently, and that upon the vendees rested the burden of continuously contributing to the expenses of maintaining the canal and the branches thereof, and whatever other structure might be necessary to conduct to their lands the flow of water which was to be produced by Gage as a permanent supply from his springs and water rights and the flow of artesian wells bored or to be bored by him, and that they did not promise to contribute to the expense of boring other wells, or of supplying and operating pumps to develop new supplies of water, or to the expense of bringing such waters to the surface. The sources of water referred to in the contracts were evidently, at the time when the contracts were made, deemed sufficient to supply all the water which was to be delivered, and the installation of pumping plants was not in the contemplation of the contracting parties. The intervention of unusual droughts thereafter cannot be held to have imposed any additional obligation on the defendant, nor to have relieved the plaintiff from its obligation to supply the water which was to be furnished under the terms of the contracts. We think the demurrer was properly sustained.

It is contended that the court below erred in striking out a certain amendment to the complaint, which was inserted for the purpose of explaining the meaning of the parties to the contracts in the use of the terms "delivered at the canal" and "measured at the canal." By the amendment it was alleged that these terms did not mean, and were not intended by the parties to mean, that the water was to be delivered into the canal free of all expense required to maintain the flow thereof, but that the intention of the parties was that the water was to be delivered at the canal end of the lateral ditches or pipes, and that the purpose of the provision for the delivery at the canal was to relieve the owners of the canal of the expense of maintaining such laterals and that at all times the parties to the contracts and their successors in interest have interpreted and construed said contracts as so alleged, and have measured the water at the canal end of said laterals, and that the defendant and its predecessors in interest have paid their proportion of the expense incurred in maintaining the flow of water in said canal, including the cost of conveying it from the various wells near the head of the canal, and including the cost of diverting the flow of the Santa Ana river and conducting the same into the canal. We are unable to see how the matter so alleged could throw any light upon

the question whether the defendant in this action should be adjudged to pay any part of the expense of purchasing, installing, maintaining, and operating pumps and pumping plants. In any view of it, it is but an attempt to plead legal conclusions, and there was no error in striking it from the complaint.

The judgment is affirmed.