[L. A. No. 4780. Department Two.—April 11, 1919.]

THE GAGE CANAL COMPANY (a Corporation), Appellant, v. EAST RIVERSIDE WATER COMPANY (a Corporation), Respondent.

EAST RIVERSIDE WATER COMPANY (a Corporation), Cross-complainant, v. THE GAGE CANAL COMPANY (a Corporation) et al., Cross-defendants.

[1] WATER RIGHTS—INJUNCTION—CONSTRUCTION OF GRANT.—In this action for an injunction prohibiting and restraining the defendant from taking from a canal owned by the plaintiff any water in excess of a stated amount, it is held the evidence sustains the finding that under the terms of the grant made to defendant by plaintiff's predecessor, which was of a right to water arising on certain lands, the right was not restricted to water having its source on a specified tract which had never in fact furnished any water, and that the grant had never been so construed or acted upon by the parties until shortly before the commencement of the action.

APPEAL from a judgment of the Superior Court of Riverside County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Purington & Adair, McFarland & Irving and Henry Goodcell for Appellant and Cross-defendant The Gage Canal Company.

William Collier for Respondent and Cross-complainant.

MELVIN, J.—Plaintiff appeals from the judgment, and embraced within the appeal are the points made on a motion for a new trial, which was denied.

By its complaint plaintiff alleged its ownership of the Gage Canal, situate in part in San Bernardino and partly in Riverside County, and its right to all of the waters carried in said canal except 367.78 inches, measured under a four-inch pressure, to which it admitted that respondent has a prior and perpetual right. It is alleged that during all the time of plaintiff's ownership defendant, without right and without plaintiff's consent, has been taking 696.88 inches of water, or 329.1 in excess of its right, and that it threatens to continue such taking and to continue to deprive plaintiff of such excess. The prayer is for an injunction prohibiting and restraining defendant from taking out of said canal any water in excess of 367.78 inches.

By its answer defendant alleged that the Gage Canal Company was merely an instrumentality and the representative of the Riverside Trust Company, Limited, and the latter corporation was made a party to the action. This pleading also set forth the history of the canal, which was built by Matthew Gage, and conveyed in 1890 to the Riverside Trust Company. It was alleged that prior to said conveyance the East Riverside Water Company and its water users had obtained from said Gage a title to 696.88 inches of water, which was in perpetuity and prior and superior to any rights of the grantor; that each of the corporations succeeding Gage had taken the canal with knowledge of said right; that for more than twenty years the designated amount of water had been delivered to the Water Company for distribution to its water users, and that said right had been judicially confirmed by certain decisions binding upon the parties hereto, in which the Water Company's obligation to pay its share of the expenses for the maintenance of the canal as originally constructed had been adjudged, and in one of which the Water Company had been found not to be liable for the expense of pumping from certain artesian wells from which a large part of the water supply flowing in the Gage Canal was and is obtained. The defendant also filed a cross-complaint to quiet its title to 696.88 inches of water.

The court found that before Matthew Gage transferred his interest to the Trust Company the Water Company had the

right to take about seven hundred inches of water; that the Trust Company took with knowledge of this obligation and that it solemnly in writing assumed the burden; that by transfer of rights the amount to which the Water Company had been entitled had been reduced to 696.88 inches; that the canal company had assumed this burden, and that the Water Company was entitled to have its title quieted to the amount of water demanded by it. Judgment was entered accordingly.

The principal controversy seems to have been with reference to the validity of a certain grant made many years ago by the predecessor of plaintiff to the East Riverside Land Company. The predecessor of the Water Company here defendant is described therein as the assignee of the Iowa Land and Improvement Company. It was dated November 10, 1886. By it for a named consideration of one hundred and sixty-seven thousand five hundred dollars, Matthew Gage sold, granted, and conveyed to the East Riverside Land Company "Three hundred and thirty-five (335) inches of water measured under a four-inch pressure, together with the use thereof, arising and flowing from the springs, water sources, water rights and artesian wells, bored or to be bored on that part of the lands of grantor lying above the flow of the Gage Canal so-called, and West of the West Line of Lot thirteen in Block 72, seventy-two, of the Rancho of San Bernardino." The contract also contains the following paragraph:

"It is understood and agreed and said understanding and agreement is indicated by the acceptance of this conveyance, that the said three hundred and thirty-five inches of water, under a four-inch pressure, have been actually delivered upon the lands of the East Riverside Land Company." Upon this contract and its predecessor the East Riverside Water Company bases its claim to 321.1 inches of water, which, according to the findings, is now being distributed, although originally that company received through gates and openings constructed at its expense the full 335 inches of water. The agreement with the Iowa Land and Improvement Company, upon which the assigned claim of the Land Company was based, was made in August, 1885.

After setting forth said contract and the conveyance to the East Riverside Land Company, the court found:

"That on the trial of this cause it was claimed, both by the Riverside Trust Company, Limited, and the Gage Canal Com-

pany, cross-defendants, that by the terms of said contract and conveyance the water sources of said canal, for the purposes of said contract and conveyance, were and consisted of about thirty acres of land, being a part of Lot 12 lying westerly of a small portion of Lot 13 and north of the south bank of the Santa Ana River, as shown upon a plat offered in evidence by the cross-defendants and marked Exhibit 65. That said lots as shown by said plat were a part of Block 72 of the lots, blocks and surveys laid down and designated upon the plan of the surveys of the Rancho of San Bernardino, as recorded in the office of the County Recorder of said San Bernardino County, California, and being a part of said Carit Tract or Orange Grove Homestead.

"That as to said claim made by the said cross-defendants the Court finds that the same is not sustained by the evidence, and further finds that no water of any kind has ever been furnished from said portion of said Carit Tract and water sources for the purpose of supplying the Gage Canal or the defendant East Riverside Water Company or its predecessors in interest. That the East Riverside Water Company is still the owner of, in control of and has used continuously, and its predecessors in interest have used continuously under said contract made with the Iowa Land and Improvement Company, and at the date of the commencement of this action, and at the date of the trial of this cause, continued to use under said contract and conveyance 329.1 inches of water, and that no part of the same since the making of said contract has ever been furnished from said tract of land as claimed by cross-defendants to be the exclusive water sources for the whole of the 335 inches provided in said contract, and for the 329.1 inches still owned, used and distributed by the East Riverside Water Company under said contract, but that at all times since the making of that contract and the execution of same, and since the year 1886, the said 329.1 inches of water have been furnished from the water sources of the said canal as transferred by deed and contract from the Riverside Trust Company, Limited, to the Gage Canal Company under date of March 17th, 1910, and executed by the said Riverside Trust Company, Limited, on the 2nd day of June, 1910, and said contract as a part of said deed being executed on the 17th day of March, 1910.''

[1] This finding is fully sustained by the evidence. For many years, although there was litigation between Mr. Gage's successors and the respondent herein, there was never any assertion until shortly before the commencement of this action that the water to be supplied under the contract and conveyance from Gage was to be limited to that to be obtained from the "Carit Tract" or "Orange Grove Homestead." In *Riverside Heights Water Co.* v. *Riverside Trust Co., Limited, and East Riverside Water Co.,* 148 Cal. 457, [83 Pac. 1003], (decided in January, 1906), it was found that the amount of water to which the company here respondent was entitled was something more than seven hundred inches. One of the matters there specifically settled was the extent of the Water Company's liability to the owner of the canal for repairs to the canal. In *Riverside Trust Co., Limited,* v. *East Riverside Water Co.,* 173 Fed. 241, [97 C. C. A. 407] (decided in October, 1909), it appears that the Trust Company pleaded this very title of the Water Company to the 335 inches of water and asked that the said East Riverside Water Company be compelled, under the terms of said contract and grant, to pay its proportion of the expense of putting pumping plants in operation upon some of the artesian wells which, at the time of the construction of the canal, had flowed by gravity. The trial court found and the court of appeals approved the finding that upon Gage or his successors rested the burden of producing the water, while upon the vendees was placed the duty of contributing to the expenses of maintaining the canal and its branches. The entire course of conduct of the producers of the water and respondent herein for many years indicated that both interpreted their respective duties and obligations as to quantity and sources of water under the "Iowa Land Company" contract exactly as found by the court. Not until January, 1911, did the plaintiff make any sort of claim that it was not bound by this agreement. At that time in a letter to respondent from the Canal Company, the claim was made that under the deed from Gage to the East Riverside Land Company "the lands described," from which alone respondent "is entitled to derive 335 inches of water, have never in fact produced that water, or any part of it." In this letter, however, the Gage Canal Company offered to compromise the matter on the basis of the assumption by the Water Company of some of the expense of pumping water

from the artesian wells. There was no such adjustment, and for more than two years, until the commencement of this action, respondent continued to take its full complement of water as represented by all of its contracts and grants just as it had been doing for something more than a quarter of a century. These and other circumstances entirely justified the court in ruling adversely to appellant's attempted construction of the contract. One of those circumstances is the fact that by the very language of the conveyance by Gage the 335 inches of water were being *at that* time actually delivered to the grantee. It would be absurd, therefore, to hold that the parties to the contract, Gage who made the grant and the grantee that paid many thousands of dollars for the water right, contemplated production of the water from a small tract from which no drop of water ever had been or could be developed for use in the canal.

The Riverside Trust Company, Limited, and afterward the plaintiff took all title to the canal, subject to the prior rights of Gage's grantees. This is evidenced by solemn writings which we need not be at pains to reproduce in this opinion.

Appellant insists that the record fails to show by competent evidence that the Water Company is the successor to the rights of the East Riverside Land Company. But there was ample proof that the defendant and cross-complainant was recognized at all times as the successor to all rights held by the East Riverside Land Company, and that appellant and its predecessor by verified pleadings declared a duty resting upon the owner of the canal to furnish water to respondent under the obligation of Gage's contract with the Iowa Company and his grant to the East Riverside Land Company.

No other alleged errors require analysis or comment.

The judgment is affirmed.

Lennon, J., concurred.

SHAW, J., Concurring.—I concur in the judgment and in the opinion of Mr. Justice Melvin, but I desire to state some additional reasons why, in my opinion, the judgment should be affirmed.

There was ample evidence to establish the fact that the defendant, East Riverside Water Company, prior to the year 1900, owned and enjoyed the right to receive through the

canal now maintained by the Gage Canal Company a flow of water amounting to 696.88 miner's inches, subject to the burden of paying its ratable share of the expenses of operating and maintaining the canal from its beginning at the water sources down to section 30 on the north bank of the Arroyo Tequesquite. This right was derived from grants made by Matthew Gage, the original owner of the water and its sources. These grants described the water which was the subject of the grant as a stated number of "inches of water measured under a four-inch pressure, together with the use thereof, *arising and flowing* from the springs, water sources, water rights and artesian wells bored or to be bored," on the parcel of land described and belonging to Gage, or in words of like effect. The right to 367.78 miner's inches of water under these grants is admitted. It is the remaining 329.1 miner's inches which the plaintiff seeks to enjoin the defendant from taking. The right to receive this 329.1 inches from the canal so long as it was composed of water "arising and flowing from the springs, water sources, water rights and artesian wells" bored on the described land, has never been seriously disputed. But about the year 1900, fourteen years after the date of the grant, owing to drought and to the apparent lowering of the water plane and of the water pressure in the vicinity of the wells, water ceased to flow from the artesian wells and none has since flowed therefrom, except such as has been raised and made to flow by means of pumps installed in the wells and maintained and operated by the Gage Canal Company and its predecessors in interest in charge of the canal.

The original grants of Gage contained no agreement or covenant on his part to keep up the flow of water in the canal by pumping water into it from wells or other sources, in the event that the water ceased to arise and flow naturally from the wells into the canal. The plaintiff herein, as successor to Gage, as I understand its position, although it is not very clearly stated in its briefs, claims that the only water which was the subject of the grant was water naturally arising and flowing from the wells, springs, and other sources; that there was no grant of any water other than that which came to the surface in this way; that plaintiff never has been and is not now under any obligation to obtain water from the wells or elsewhere by means of pumps and conduct such water into the canal to satisfy the grant; that when the water per-

manently ceased to flow from the wells the right which was the subject of the grant became extinguished and that when plaintiff obtained other water by means of pumps or otherwise, either from the wells or elsewhere, it did that which it was not bound to do; that it is under no obligation to continue to pump that water and deliver it to the Water Company, and, consequently, that the Water Company has no right to take from the canal any part of the water flowing therein so obtained by pumps. The main question thus presented for decision is whether or not, by reason of the language of the grants or otherwise, the plaintiff, as successor of Gage, is bound to maintain the supply of water in the canal necessary to fulfill the grants, even if it is obliged to resort to pumps, or to obtain the water from some other source, in order to do so.

I am unable to find in the language of the grants anything which imposes this obligation upon Gage and his successors in interest. Apparently, the grant was of water naturally flowing, and there is nothing to indicate that the maintenance of the supply by means of pumps or other artificial constructions was intended or contemplated by the parties. If there was no other evidence of the right to insist that the plaintiffs should produce the water by pumps than these grants, I should be inclined to hold that the judgment was erroneous.

It appears, however, that when the water ceased to flow in the year 1900, the country had reached such a state of development that the continuance of the supply was necessary in order to prevent disaster. In this emergency the Riverside Trust Company, the immediate predecessor of the plaintiff, proceeded to install pumps and maintain the supply of water in the canal by pumping the required amount from the wells from which the water previously had flowed naturally. This water it delivered, as before, to the parties holding rights under the Gage grants. This immediately gave rise to the question whether the parties holding these rights were obliged to contribute to the additional expense of obtaining the water caused by the necessity of pumping. The water users claimed that the Trust Company was bound to maintain the supply, while the Trust Company claimed to the contrary and presented bills to the users, for the due proportion of each, of the expenses of installing and operating the pumps. The East Riverside Canal Company refused to pay these bills, and

thereupon the Trust Company began an action against it in the United States district court for the southern district of California to recover the ratable share of such expenses which it had charged to said Canal Company, basing its action upon the theory that it was under no obligation to pump the water and that all the parties interested were bound to contribute to the expense thereof. In that action the court decided that the intervention of unusual droughts and the cessation of the natural flow of the water did not relieve the plaintiff from its obligation to supply the water which was to be furnished under the terms of the original grants, and that said grants "import that upon Gage rested the burden of producing the water and causing the same to flow upon the surface, thence to be turned into the canal and delivered continuously and permanently." (*Riverside Trust Co.* v. *East Riverside Water Co.*, 173 Fed. 244, [97 C. C. A. 410].) Judgment was given accordingly in favor of the defendant. This judgment was introduced in evidence to support the claims of the defendant in this action. It was clearly an adjudication to the effect that the Trust Company, as successor to Gage, was obliged to maintain enough water in the canal to satisfy the grants, at least if there was enough in the land comprising the source, and that the Water Company was entitled to receive the same without contributing anything to the expenses of maintaining and operating the pumps.

This adjudication is binding upon the said Trust Company and upon its successors in interest, including the plaintiff, so far as it decided the true meaning and effect of all the grants under which the defendant holds its water rights in the canal. A judgment of a court having jurisdiction of the parties "operates as an estoppel to preclude the 'parties or privies from contending to the contrary of that point or matter of fact, which, having been once distinctly put in issue by them, has been, on such issue joined, solemnly found against them.'" (*Koehler* v. *Holt Mfg. Co.*, 146 Cal. 337, [80 Pac. 74]; *Cromwell* v. *County of Sacramento*, 94 U. S. 353, [24 L. Ed. 195, see, also, Rose's U. S. Notes]; *Wiese* v. *San Francisco Musical Soc.*, 82 Cal. 645, [7 L. R. A. 577, 23 Pac. 212]; *Freeman* v. *Barnum*, 131 Cal. 389, [82 Am. St. Rep. 355, 63 Pac. 691].) In the case between the Trust Company and the Water Company in the federal court, the point that the Canal Company was bound to supply enough water to satisfy the

grants, free of charge for pumping the same, was distinctly put in issue and was adjudged in favor of the Water Com-. pany. The plaintiff as successor of the Trust Company is therefore estopped from ever contending that it is not obliged by the grant to continue to furnish to the successors of the original grantees the water which it has caused to flow in the canal by pumping the same to the surface. The findings in the case state the ultimate fact that the defendant is entitled to take the water in controversy from the canal and to have the same produced at the surface by whatever means may be adopted by the person charged with the duty of operating the canal, free from any charge for the expenses of maintaining or operating pumping plants or other appliances for bringing said water to the surface of the land comprising said water sources. This finding is supported by the judgment given in evidence, and it is sufficient to sustain the judgment denying the injunction.