[L. A. No. 17319. In Bank.—April 15, 1940.]

ROLLAND J. JOHNSON, Appellant, v. FONTANA COUNTY FIRE PROTECTION DISTRICT (a Body Politic), et al., Respondents.

A. J. Getz for Appellant.

Jerome B. Kavanaugh, District Attorney, and Swing & Swing for Respondents.

Lasher B. Gallagher, *Amicus Curiae*, on Behalf of Respondent.

HOUSER, J.—This is an appeal from a judgment denying petitioner's application for a writ of *mandamus*. The proceeding was instituted for the purpose of compelling the payment of a judgment which the petitioner theretofore had recovered against the Fontana County Fire Protection District, and against one George Calkins, asserted to be the agent or employee of the district.

A hearing was granted by this court after decision by the District Court of Appeal, on rehearing, in which that court upheld the judgment of the trial court denying issuance of a peremptory writ upon the ground that the peremptory writ,

if issued, could not be made to conform legally to the exact terms of the alternative writ—the hearing having been granted herein in order to give further consideration to the several questions presented on the appeal. After a review of the entire record we conclude that the first opinion prepared by the District Court of Appeal, and filed on February 8, 1939, correctly expresses the views of this court with respect to the principal issues presented by the appeal. Therefore, we shall incorporate hereinafter, as a part of this opinion, certain portions of the language of that decision.

It appears that on May 23, 1923, an act of the legislature (Stats. 1923, p. 431) with relation to the organization and maintenance of fire protection districts was approved by the governor, and in due course thereafter became the law of this state.

Briefly, as far as here seems essential to be noted in that respect, the provisions of the act authorize the board of supervisors of any county of the state to proceed in a specified manner toward the formation and organization of fire protection districts within the county; and in the event that any objection be made to the proposed creation of any fire protection district, the board is authorized to call and conduct an election by the qualified voters of the proposed district on the question whether the organization and establishment of such district shall become effective. The act also provides that the board of supervisors "shall be the governing body" of the district; and among the various powers and duties of such body as are therein specified is included the right to appoint "agents and employees . . . to police the district", and *"to perform all other acts necessary or proper to accomplish the purposes"* of the act. (Emphasis added.) By the terms of the act the said governing body is also authorized "to maintain and operate the property acquired for the purposes of the district", as well as to "acquire real or personal property needful for the purposes of said district and to dispose of the same when no longer needed",—the title to such properties to be vested in the county in which such district is located. Furthermore, power is conferred upon the board of supervisors to levy taxes on the taxable property in the district to defray the cost of maintenance and other expenditures of the district; and, in specified circumstances, procedure is outlined for the dissolution of the district, the determi-

nation of which is effected by a majority vote of the voters of the district,—and for the disposition of the property of the district in the event of such dissolution.

In 1925 (Stats. 1925, p. 671) the original act was amended, by which it was provided that the board of supervisors be retained as the "governing body" of a fire protection district, also that the said board might appoint five commissioners as its agents to manage the affairs of the district and to exercise any or all of the powers therein specified.

However, by a further amendment to the act noted in statutes of 1931, page 1599, the provision which related to the appointment by the board of supervisors of "five commissioners as its agents to manage the affairs" of the district was deleted from the act,—which alteration had the probable effect of restoring the pertinent original provisions of the act with respect to the management of the district by the said board.

Pursuant to such statute and the 1925 amendment hereinbefore referred to, on April 16, 1928, the board of supervisors of San Bernardino County adopted a resolution by which it was declared that the respondent Fontana County Fire Protection District had been duly established; and thereafter, on April 20 of the same year, the said board of supervisors appointed a board of fire commissioners for that district,—the members of which board assumed office and thereafter continued to serve in their appointive capacity as such board of fire commissioners for the district, at least up to and including the date of the commencement of the action against Calkins and the district which resulted in the rendition of the judgment here sought to be enforced.

With regard to the last-mentioned judgment, it appears that on or about October 3, 1935, appellant herein, as plaintiff, commenced an action in the Superior Court of San Bernardino County against George Calkins, the Fontana County Fire Protection District, the county of San Bernardino, and others (as to whom the action was later dismissed), to recover a judgment for damages asserted to have arisen from personal injuries alleged to have been sustained by plaintiff through the negligence of defendant Calkins in the operation of a certain "Willys Knight" automobile. The complaint filed therein contained allegations to the effect that "the defendant, The Fontana County Fire Protection District, . . . was, and now is, a body politic and a district organized and exist-

ing pursuant to a statute of the State of California, approved May 23rd, 1923; Statutes of 1923, Page 431 thereof, as amended''; also that the defendant, George Calkins, was the owner of the aforementioned automobile ''and that at all times herein mentioned, . . . the Defendant George Calkins was an officer, agent and employee of the said District, . . . and was driving and operating the said 'Willys Knight' [automobile] within the scope of his office, agency and employment as such officer, agent and employee . . . and on behalf of said District . . . and with the knowledge and consent of [the latter]''. By its answer to said complaint the defendant Fontana County Fire Protection District specifically admitted the truth of each and all of said allegations.

On the trial of the *mandamus* action, the following facts were stipulated: That before the former action came to trial it was dismissed as against the county of San Bernardino; that the defendants George Calkins and the fire protection district appeared at the trial, pursuant to which a judgment for $3,500 and costs was entered in favor of plaintiff and against George Calkins and the said district; that the judgment had become final as no appeal therefrom had been taken; and that ''said George Calkins was, at the time of said collision, acting as a volunteer fireman for said Fontana County Fire Protection District, by appointment of one Earl Reeves, who was then and there acting in the capacity of Fire Chief of the Fontana Volunteer Fire Department; that said Earl Reeves was acting as such Fire Chief under appointment by the aforementioned Fire Commissioners''.

The answer of the several respondents herein to the petition for the writ of *mandamus* discloses the fact that their principal defense and objection to its issuance consisted in the alleged invalidity of the judgment which theretofore had been rendered in favor of plaintiff against the Fontana County Fire Protection District,—for the reason, as asserted by them, that the district is not ''an entity against which such a judgment can be rendered, and that there is no provision in law for the rendition of such a judgment against said Fontana County Fire Protection District predicated upon the negligence of said George Calkins, and that the records and proceedings in [the] action show upon their face that the said judgment is void''; also for the asserted reason that ''there is no provision in law for collecting any such judgment against

said Fontana County Fire Protection District", it not being "a body politic or a district which can be sued . . . ". By amended answer to the petition for the writ, certain of the respondents further alleged, in addition to the foregoing, that "the said 'Fontana County Fire Protection District' is not . . . a public corporation, a body politic or *a district established by law*, or a subdivision of the State of California, . . . "; also "that the said George Calkins was not . . . appointed by the Board of Supervisors as an agent, officer or employee of said Fontana County Fire Protection District, and upon information and belief these respondents allege that at no time mentioned in said complaint was said George Calkins an officer, agent or employee of said Fontana County Fire Protection District, nor was he at any of the times mentioned in said complaint acting within the scope of any agency or employment under said Fontana County Fire Protection District, and that if he were then assuming to so act, he was doing so without authority and without being appointed, employed or authorized so to do". (Emphasis added.)

The trial court made its findings of fact and conclusions of law strictly in accordance with the said defense of the respondents to the writ, in that its findings of fact recited "that the said Fontana County Fire Protection District is not a body politic, nor is it a county or a city; nor is it a district against which any suit or action can be maintained or prosecuted; that said Fontana County Fire Protection District has no legal entity, nor legal status as an entity, and had no authority to employ agents or servants, nor to contract any liability, either directly or indirectly, for which such district would be liable; that no provision has been made in law or otherwise for the payment of any judgment rendered or entered against such district"; furthermore, "that there is no statute or law which authorized the bringing or prosecution of the action by petitioner against Fontana County Fire Protection District, in which action the aforesaid judgment was rendered, and that such judgment is without force or effect insofar as said district is concerned". In other words, the respondents to the petition alleged, and the trial court found and declared as its conclusions of law, that Fontana County Fire Protection District was not a body politic nor a legal entity; that it had no authority to employ agents or servants; and that, as such, no suit or action might be

maintained or prosecuted against it. In accordance therewith the trial court rendered the judgment which is the subject of the instant appeal, to wit, that the petitioner was "not entitled to the relief prayed for and that the application for a writ of *mandamus* be denied, . . . ".

We here quote from the first decision of the District Court of Appeal hereinbefore referred to (reported in (Cal. App.) 87 Pac. (2d) 426), which includes further consideration of the points raised on this appeal by the respective parties:

"The . . . [respondents contend] that nothing in the act, pursuant to which this district was formed, authorized the supervisors to levy a tax for the purpose of paying such a judgment as the one here in question. That act, however, makes the board of supervisors the governing body of such a district with the right to appoint agents and employees to carry out the purposes of the district, to acquire real and personal property needful for such purposes, and to perform all other acts necessary or proper to accomplish the purposes of the act. The board of supervisors are also authorized to levy a tax sufficient to defray *the cost of maintenance* of the district. One of the costs of maintenance would be a judgment of this nature, arising from the manner in which the operations of the district are carried on, if liability therefor is imposed upon the district by statute. Section 1714½ of the Civil Code, now section 400 of the Vehicle Code, imposed liability on a '*district established by law*' for negligence in the operation of any motor vehicle owned by the district and for any injury occurring as the result of the negligent operation of any other motor vehicle by any officer, agent or employee of the district when acting within the scope of his office, agency or employment, and further provides that any such injured person may sue any 'district established by law'. If the district here in question is a district established by law, within the meaning of this statute, it is liable for the negligence of its agents and employees, the amount for which the district is thus liable is a part of the cost of maintenance of the district, and the authority and duty of the supervisors to levy a tax sufficient to cover the same sufficiently appears from the act under which the district was created and the statute imposing liability.

"The next question presented is whether this district is one established by law within the meaning of the statute. The . . . [respondents contend] that such a district is not an entity which can be sued because it has no autonomy, performs no functions in its own name, owns no property, has no money, and as a district pays no part of the cost or expenses incurred for fire protection. It is argued that the formation of such a district is simply a means of designating the exterior boundaries of property that requires fire protection and which will be assessed for that purpose, that the board of supervisors has complete control, the owners of property within the district have no voice as to how the district shall be managed or how fire protection shall be provided, and that such a district is analogous to a street improvement district created only to bear the burden of the cost of street improvements but which has no separate entity and which cannot be sued.

"The act under which the district was organized provides that such a district can be established and dissolved only upon the vote of the people of the district. While the supervisors are the governing board of the district and hold title to its property, they act in a representative capacity and hold this property for the use and benefit of the district. While they handle the money of the district they collect and pay out this money for the benefit of the district and in carrying out its purposes. There is not much similarity between such a district and an assessment district which carries on no continuous function and exists solely for the purpose of paying for a public improvement. In a very real sense the district is not only performing functions but performing a well-recognized governmental function in furnishing protection against fire. The very purposes for which the district is organized call for a continuing exercise of this governmental function which involves the use of property, including automobiles to be operated upon the public highways. The district is not only established pursuant to law but the purposes of its establishment necessarily contemplate the use of necessary equipment and the carrying out of these operations requires, under present conditions, the use of automobiles. Negligence in the use of automobiles by various governmental agencies led to the adoption of section 1714½ of the Civil Code, the terms of which are now found in section 400 of

the Vehicle Code. There is no essential difference between the operation of an automobile by the agent or employee of a fire protection district and the operation of such a vehicle by an agent or employee of one of the other governmental agencies named in the statute. The statute was aimed at a condition existing, and which might exist, on the highways, and the language used, 'district established by law', is broad enough to include the district here in question. The legislature must have intended to impose liability for the negligence of its agents in the use of automobiles on such a district as this which is created pursuant to a statute, and which uses agents and automobiles in the continuous performance of a governmental function.

■ "In an amended answer the respondent supervisors alleged that George Calkins was not an agent or employee of the district and the court so found. The appellant contends that the court's finding and conclusion in that regard are erroneous since the fact Calkins was an agent and employee of the district was judicially determined in the damage action, to which the district was a party, and that such previous determination of that fact is *res adjudicata* in this proceeding. It is . . . [respondents'] position that the implied finding of the jury in the former action, that Calkins was an employee of the district, is overcome by the court's finding in this proceeding and that the question of whether or not Calkins was an agent or employee of the district was open for consideration in this proceeding because of the above mentioned stipulation to the effect that Calkins was at the time acting as a volunteer fireman under appointment by one Earl Reeves, who was acting as fire chief under appointment by the five commissioners. If the question was an open one it may be conceded that the stipulated facts with respect to the appointment of Calkins support the court's finding. This is especially true since the power of the supervisors to delegate certain of their duties to appointed fire commissioners was probably ended in 1931, when the provision authorizing the appointment of commissioners and the delegation of duties to them was stricken from the statute. The question, however, was not an open one merely because of the stipulation above referred to. The parties simply stipulated as to certain facts relied upon by them respectively, and it was in no way stipulated that any particular fact

should be controlling in the face of other facts which were also stipulated. Whether or not the previous judgment, with its implied finding of agency, was controlling here must depend upon general rules of law applicable to that question.

"A former adjudication between the same parties may be either a final determination of the rights of the parties or may be an adjudication of certain questions of fact which have been put in issue and decided. (*People* v. *Bailey,* 30 Cal. App. 581 [158 Pac. 1036].) A judgment operates as an estoppel to prevent the parties thereto or their privies from contending to the contrary as to a matter of fact which was found against them in arriving at the judgment. (*Koehler* v. *Holt Mfg. Co.,* 146 Cal. 335 [80 Pac. 73]; *Baker* v. *Eilers Music Co.,* 175 Cal. 657 [166 Pac. 1008]; *Gage Canal Co.* v. *East Riverside Water Co.,* 180 Cal. 204 [180 Pac. 332].)

"In the matter now before us it appears that the district was made a defendant in the previous damage action, in which it was alleged that Calkins was an agent and employee of the district. The district admitted this fact in its answer and the judgment against the district, which followed, could only have been based upon that fact. While the supervisors, as the governing board of the district, were not made parties to the former action, the district appeared and defended the action, specifically admitting that Calkins was at the time an agent of the district and acting within the scope of his employment. We think it may not be successfully contended that the real parties in interest were not the same in that action and in the present proceeding. While the supervisors are made parties to this proceeding it is fully apparent that they are parties thereto only in their representative capacity, as the governing board of the district. In *Price* v. *Sixth District Agricultural Assn.,* 201 Cal. 502 [258 Pac. 387], the court said:

"'Appellants make the point that inasmuch as the former suits were in reality *County of Los Angeles* v. *Chairman of the Board of Supervisors* and *City of Los Angeles* v. *Mayor* (51 Cal. App. 492 [197 Pac. 403]), the rule should not apply. If, however, fraud and collusion be absent, the public interest may be as well represented by the mayor or chairman of the board of supervisors as by any set of taxpayers. For example, the fact that a man has been elected mayor

of the city is no reason to suspect that he will not properly represent the public interest, and when such officer defends an action relating to a public contract, no reason can be found why he may not be a suitable, if not the most suitable, representative of the public interest in the matter. This very question was raised in *State ex rel. Davis* v. *Willis,* 19 N. D. 209 [124 N. W. 706]. There the estoppel by judgment was made to rest upon the case of *State ex rel. McCue* v. *Blaisdell,* 18 N. D. 31 [119 N. W. 360], which was a suit by the attorney-general applying for a writ of *certiorari* against the Secretary of State, and in this connection the court, in disposing of the contention that the taxpayer was not a party to the suit, said: "Appellant urges, however, that he is not bound by any of the facts adjudged in that proceeding, for the reason that he was not a party thereto, and that the record of that proceeding nowhere discloses any connection of his with that case. It is apparent, however, that plaintiff, acting as he does in a representative capacity, is, constructively at least, a party to any action or proceeding in which the same interest was plaintiff. . . . Standing as he does as representative in a matter of general interest to all of the citizens of Ward county, he is concluded with reference to any state of fact which was or might have been adjudged against that interest in a former action in which the same interest was plaintiff or defendant." '

"In *Servente* v. *Murray,* 10 Cal. App. (2d) 355 [52 Pac. (2d) 270], it is said: 'The identity of the issue and the determination thereof is of more importance than the identity of the parties named. If they hold the same rights of interest as principals, agents or representatives and are in fact adverse parties, or their interests are adverse in the two proceedings, the identity of the parties is sufficient. In the present case the identity of the petitioner is identical with the petitioner in the prior proceedings. . In the first action there was an adjudication against the members of the pension board of the city of Alameda, consisting of the city manager, mayor and treasurer *ex officio.* The present action was instituted against the mayor, city manager, treasurer, auditor and chief of police of the same city. The respondent officers in each case were the agents of the municipality and equally bound by the original judgment. . . . In each proceeding the respondents were merely the representatives of

the real adverse party, the municipality. Special circumstances may arise making this rule inapplicable, but generally a political subdivision and the officers, boards, commissions, agents and representatives thereof form but a single entity. (*Price* v. *Sixth District Agricultural Assn., supra,* at p. 513; *Davidson* v. *Baldwin,* 2 Cal. App. 733 [84 Pac. 238]; *Bernhard* v. *Wall,* 184 Cal. 612 [194 Pac. 1040]; *People* v. *Holladay,* 93 Cal. 241 [29 Pac. 54, 27 Am. St. Rep. 186].)'

''We think these principles apply here and that the previous judgment was controlling on the question of whether or not Calkins was an agent of the district, and that such a question was not open to consideration in the *mandamus* proceeding.'' (Emphasis added.)

Additionally, as hereinbefore has been stated, as no appeal was taken from the original judgment it long since had become final and, in accordance with the above rulings, it is not now open to what amounts to no more than a collateral attack by the respondents herein.

From the foregoing, therefore, it becomes apparent that, notwithstanding the question with respect to the existence or nonexistence of the board of fire commissioners at the time the action was originally instituted, the board of supervisors nevertheless was the governing body of the respondent district and, as such, had full authority to pay plaintiff's judgment if there was money properly available therefor,—or, if funds were not available, to levy a tax for that purpose upon the taxable real property within the district. The obvious purpose of the *mandamus* proceeding was to enforce the payment of petitioner's judgment, and as he had a substantial right to protect we should not deny him relief for the reason that either by the terms of his prayer, or by those of the alternative writ, it was assumed that the board of fire commissioners was or might be then in existence and possessed of the authority to act for or on behalf of the district in the matter of the payment of said judgment. In that regard it appears that petitioner also asked relief against the duly constituted board, to wit, the board of supervisors. Furthermore, it appears that the prayer of the petitioner contained a request for general relief. In a proper case this court may pursue the *exception* to the general rule that a peremptory writ will not issue where it legally cannot

follow the directions set forth in the alternative writ. (*Larkin* v. *Superior Court,* 171 Cal. 719 [154 Pac. 841, Ann. Cas. 1917D, 670].) Where principles of justice and fairness may require its issuance, the writ may issue in an appropriate case despite the provisions of the alternative writ.

Accordingly, it follows that the judgment is reversed, with instructions to the trial court to issue a peremptory writ of *mandamus* directed to the board of supervisors of San Bernardino County as the governing board of the Fontana County Fire Protection District, requisitioning the county auditor of San Barnardino County to draw a warrant upon funds of the said Fontana County Fire Protection District for payment of the judgment herein mentioned together with interest for the period and in the amount set forth in the alternative writ; directing the county treasurer to pay such warrant if there be sufficient money in the county treasury to the credit of the said fire protection district not otherwise appropriated; or, if there be insufficient funds to pay the said warrant, directing the board of supervisors to include the amount of such unpaid judgment, with interest and costs, in the next tax levy made or to be made by the said board on the taxable real property within the limits of the said fire district, and that the said county treasurer be ordered to pay the said warrant when such tax so levied is collected.

Respondents herein also have filed a motion for diminution of the record to have included as a part of the present record (1) the original alternative writ issued in the present action, together with (2) the judgment roll in the former action entitled *Johnson* v. *Calkins,* No. 38967. In view of the conclusions arrived at hereinbefore respecting appellant's right to have issued a peremptory writ in accordance with the terms and in the manner heretofore indicated, and since the court in the present action has considered the effect of the said former judgment (No. 38967) the same as though the judgment roll therein had been included in the present record, the said motion for diminution is denied.

Curtis, J., Waste, C. J., Edmonds, J., Gibson, J., Carter, J., and Shenk, J., concurred.