[Civ. Nos. 42367, 43812. Second Dist., Div. Three. Oct. 4, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
RATH PACKING COMPANY, INC., Defendant, Cross-complainant and Respondent;
M. H. BECKER, as Director, etc., Cross-defendant and Appellant;
C. B. CHRISTENSEN, as Director, etc., Intervener and Appellant.

310

COUNSEL

Joseph P. Busch and John K. Van de Kamp, District Attorneys, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

John H. Larson, County Counsel, and Arnold K. Graham, Deputy County Counsel, for Cross-defendant and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Herschel T. Elkins and Allan J. Goodman, Deputy Attorneys General, for Intervener and Appellant.

Gibson, Dunn & Crutcher and Dean C. Dunleavey for Defendant, Cross-complainant and Respondent.

OPINION

GOERTZEN, J.*—These two appeals, involving virtually identical facts and issues of law, have been consolidated for consideration by this court. In No. 42367, the People and others appeal from the granting of a motion for a preliminary injunction by the Los Angeles County Superior Court. In No. 43812, the same parties appeal from a judgment of that court granting declaratory relief and permanently enjoining them from enforcing certain provisions of California law against defendant Rath Packing Company (Rath). The effect of the granting of the permanent injunction was to render the appeal from the granting of the preliminary injunction moot, and we therefore dismiss the appeal in No. 42367. (*People* v. *Gordon* (1951) 105 Cal.App.2d 711, 725 [234 P.2d 287]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 77, p. 4089.)

### STATEMENT OF THE CASE

On March 1, 1972, the People, through the District Attorney of Los Angeles County, filed a complaint for an injunction, civil penalties and other relief against Rath, praying that Rath be enjoined from the advertising and sale of short-weighted packages of bacon and seeking the recovery of monetary damages as well.

The complaint alleged that the net weight of packaged bacon which was processed, labeled, sold and distributed by Rath was, when offered for retail sale to the consuming public during the period of October 21,

---

*Assigned by the Chairperson of the Judicial Council.

1971, to February 24, 1972, frequently found to be less than the net weight stated on the packages (i.e., one pound) and that "[d]efendant Rath, by its action in 'short-weighting' the contents of bacon packages as alleged . . . , intended to and has deceived, misled and otherwise induced substantial numbers of the consuming public into purchasing its bacon products."

The People further alleged that Rath, by packaging and selling "short-weighted" bacon to the public, was in violation of California laws proscribing (1) false advertising (Bus. & Prof. Code, § 17500),[1] (2) unfair competition (Civ. Code, § 3369),[2] and (3) misbranding (Health & Saf. Code, §§ 26550, 26551).[3]

[1]At the time of the alleged violations, Business and Professions Code section 17500 provided as follows: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this State, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised." (Added by Stats. 1941, ch. 63, § 1, p. 727, amended by Stats. 1955, ch. 1358, § 1, p. 2443.)

In 1976 Business and Professions Code section 17500 was amended by the addition of language pertaining to penalties following criminal prosecution. (Stats. 1976, ch. 1125, § 4, p. 5030.)

[2]At the pertinent time, Civil Code section 3369 read in part as follows: "2. Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction. [¶] 3. As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Business and Professions Code Sections 17500 to 17535, inclusive. [¶] 4. As used in this section, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons. [¶] 5. Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney in this State in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public." (Enacted 1872, amended by Stats. 1933, ch. 953, § 1, p. 2482, and Stats. 1963, ch. 1606, § 1, p. 3184.)

After undergoing several changes, Civil Code section 3369 was amended in 1977 so as to eliminate the above-quoted language, which is now substantially contained in Business and Professions Code sections 17200 to 17204. (Stats. 1977, ch. 299, § 2, p. 1202.)

[3]At the relevant time, Health and Safety Code section 26550 provided, and continues to provide, that "[a]ny food is misbranded if its labeling is false or misleading in any

In its answer to the complaint, Rath alleged that "at all times mentioned in the complaint the average net weight of the contents of packages of bacon which Rath has processed, packaged, labeled and sold has been equal to or greater than the net weight stated on the face of the package *at the time said packages leave Rath's plant.*" (Italics added.)

Rath also filed a counterclaim against the People and a cross-complaint against M. H. Becker, as Director of the County of Los Angeles Department of Weights and Measures (hereinafter Becker), in which Rath alleged (1) that the federal Wholesome Meat Act (21 U.S.C. § 601 et seq.) and regulations adopted pursuant thereto require that weight statements on products packaged pursuant to said laws need only be accurate upon shipment from a federally inspected establishment, and (2) that the People and Becker were acting contrary to federal law when they enforced state laws which require that label weight statements be accurate *at a time after they leave Rath's plants.* In this regard, Rath further alleged in both its counterclaim and cross-complaint that "reasonable variation from the stated quantity of contents caused by loss of moisture during the course of good distribution practices or by unavoidable deviations in good manufacturing practice . . . is specifically recognized and allowed by the United States Department of Agriculture under 21 U.S.C. § 601(n)(5) and title 9, C.F.R. § 317.2(h)(2)."

Through its cross-complaint, Rath sought declaratory and injunctive relief with respect to Becker's enforcement of net weight labeling requirements by the use of "off-sale orders."

Becker answered the cross-complaint, denying the material allegations thereof and alleging that in requiring true weight to consumers he had

particular."

As added in 1970, Health and Safety Code section 26551 defined a misbranded food as one whose labeling or packaging did not conform to the requirements of Health and Safety Code section 26400 et seq., wherein is contained the factors to be considered in determining whether a labeling or advertisement of a food product is misleading. (Stats. 1970, ch. 1573, § 5, p. 3258, eff. Nov. 23, 1970.)

In 1971 section 26551 was amended so that it now reads in pertinent part: "Any food is misbranded if it is in package form, unless it bears a label containing all of the following information: (a) The name and place of business of the manufacturer, packer, or distributor. (b) An accurate statement of the quantity of the contents in terms of weight, measure or numerical count. [¶] Reasonable variations from the requirements of subdivision (b) shall be permitted. . . ." (Stats. 1971, ch. 646, § 19, p. 1274, eff. Mar. 4, 1972.)

acted in accordance with the Wholesome Meat Act and pursuant to California's police power.

On June 8, 1972, the superior court granted a preliminary injunction (the subject of appeal No. 42367) which prohibited Becker from ordering underweight packages of Rath's products off sale. In addition, Becker and his deputies, inspectors, officers, agents, and those acting in active concert or participation with him were restrained and enjoined from "imposing marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under the Wholesome Meat Act of 1967 . . . ."

On July 7, 1972, the court below granted the motion of C. B. Christensen, as Director of Agriculture for the State of California (hereinafter Christensen), for leave to intervene and file a complaint and an answer in intervention. In his complaint in intervention, Christensen charged that Rath-packaged bacon contained less than the amount stated thereon and that the sale of such packages was in violation of Business and Professions Code sections 12024,[4] 12024.5,[5] 12211,[6] and

---

[4]Business and Professions Code section 12024: "Every person, who by himself, or through or for another, sells any commodity in less quantity than he represents it to be is guilty of a misdemeanor."

[5]Business and Professions Code section 12024.5 provides in pertinent part: "Any commodity specified in this section . . . need not be weighed at time of sale if at that time it is packed in a package or container upon which appears the net weight of the commodity therein. Except as provided below, any person, including but not limited to a manufacturer, processor, packer, wholesaler, or jobber that packs any commodity specified in this section in any package which is intended for retail sale, shall mark the net weight of the commodity therein upon the package."

[6]At the time of the alleged violations, Business and Professions Code section 12211 provided in relevant part as follows: "Each [county] sealer shall, from time to time, weigh or measure packages, containers or amounts of commodities sold, or in the process of delivery, in order to determine whether the same contain the quantity or amount represented and whether they are being sold in accordance with law. [¶] The director [of agriculture] is hereby authorized and directed to adopt and promulgate necessary rules and regulations governing the procedures to be followed by sealers in connection with the weighing or measuring of amounts of commodities in individual packages or containers or lots of such packages or containers, including the procedures for sampling any such lot, and in determining whether any package or container or a lot of such packages or containers complies with the provisions of this section. Any such rule or regulation, or amendment thereof, shall be adopted and promulgated by the director in conformity with the provisions of Chapter 4.5 (commencing with Section 11371), of Part 1 of Division 3 of Title 2 of the Government Code; provided, that *the average weight or measure of the packages or containers in a lot of any such commodity sampled shall not be less, at the time of sale or offer for sale, than the net weight or measure stated upon the package,* and provided further, that said rules or regulations applicable to food, as defined in Section 26450 of the Health and Safety Code, insofar as possible, shall not require higher

17500 (fn. 1, *ante*) and Civil Code section 3369 (fn. 2, *ante*). Christensen prayed for an injunction preventing Rath from violating these statutes.

On September 18, 1972, after obtaining leave of court, the People amended their complaint so as to increase the amount of civil penalties sought.

At the time the case was called for trial, Rath made a motion pursuant to Code of Civil Procedure section 597 for trial of the special defense that the causes of action alleged in the first amended complaint and in the complaint in intervention were barred by the prior judgment in *Rath Packing Company* v. *Becker* (C.D.Cal. 1973) 357 F.Supp. 529, claiming that the federal district court had held (1) that the People, Becker and Christensen cannot act under state law to enforce the federal standard, and (2) that Becker, Chistensen and the People can enforce only the federal statutory scheme, nothing in addition thereto and nothing different therefrom. The court granted Rath's motion and eventually dismissed the first amended complaint and the complaint in intervention on the basis that they were barred by the prior federal decision, but refused to enter judgment thereon. The court proceeded to try the cross-complaint against Becker and Christensen over the requests of counsel for those parties to stay trial on Rath's cross-complaint pending a determination of the appeal of the court's dismissal of the complaint and

standards and shall not be more restrictive than regulations, if any, promulgated by the Department of Health, Education, and Welfare, Food and Drug Administration, under the provisions of the Federal Food, Drug and Cosmetic Act. [¶] Any lot or package of any such commodity which conforms to the provisions of this section shall be deemed to be in conformity with the provisions of this division relating to stated net weights or measures. [¶] Whenever a lot or package of any commodity is found to contain, through the procedures authorized herein, a less amount than that represented, the sealer shall in writing order same off sale and require that an accurate statement of quantity be placed on each such package or container before same may be released for sale by the sealer in writing. The sealer may seize as evidence any package or container which is found to contain a less amount than that represented." (Italics added.) (Added by Stats. 1939, ch. 43, § 1, p. 450, as amended by Stats. 1949, ch. 1384, § 3, p. 2407, Stats. 1957, ch. 1658, § 1, p. 3038, and Stats. 1963, ch. 353, § 1, p. 1144.)

In 1973, language was added to section 12211 permitting the director of agriculture to adopt and promulgate rules and regulations relating to the inspection of malt beverages. (Stats. 1973, ch. 1033, § 1, p. 2049.)

The reference to the Federal Food, Drug and Cosmetic Act in section 12211 has no bearing on the issues presented in the case at bench since that act expressly excludes meat food products from *its* coverage to the extent that its provisions conflict with those of the Wholesome Meat Act. (21 U.S.C. § 392.)

the complaint in intervention. The court signed its judgment in Rath's favor on all matters on February 15, 1974, and judgment was entered on February 22, 1974. Among other things, the judgment: (1) declared that the People's first amended complaint and Christensen's complaint in intervention were barred by the res judicata effect of the prior federal district court's decision in *Rath Packing Company* v. *Becker, supra*; (2) permanently enjoined the enforcement of California laws pertaining to net weight labeling, including the regulatory scheme of title 4, California Administrative Code, chapter 8, subchapter 2, articles 5 and 5.1,[7] except to the extent that such laws are applied in a manner consistent with the labeling requirements imposed by federal law; and (3) for all practical purposes, prohibited the further use of California's off-sale enforcement procedure.[8]

On March 1, 1974, the People, Christensen and Becker's motion for a stay of judgment pending appeal was denied.

The People, Christensen and Becker (hereinafter sometimes referred to collectively as appellants) each filed timely notices of appeal from the judgment (which is the subject of appeal No. 43812) and petitioned this court for a writ of supersedeas; the requested writ issued on March 22, 1974.

---

[7]Article 5 establishes a comprehensive procedure for testing commodities to determine their compliance with the requirement stated in Business and Professions Code section 12211 (fn. 6, *ante*) that the average weight of a sampled lot of a commodity shall not be less at the time of sale than that represented on the package. Article 5.1 was adopted as a temporary measure designed "to protect California wholesalers, retailers, and consumers against short weight packages of meat and meat products . . ." by providing for the off-sale of "packages which contain less usable product at time of retail sale than is represented by the label weight . . . ." (Cal. Admin. Code, tit. 4, ch. 8, subch. 2, art. 5.1, § 2940.) By its own terms, article 5.1 was to apply only during the pendency of the federal proceedings associated with this case, which have since concluded with the Supreme Court's decision in *Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519 [51 L.Ed.2d 604, 97 S.Ct. 1305].

For a detailed discussion of the applicable provisions of articles 5 and 5.1, see *Rath Packing Co.* v. *Becker* (9th Cir. 1975) 530 F.2d 1295, 1299-1300, 1316.

[8]The judgment of the court also barred enforcement of several miscellaneous provisions of California law not previously mentioned, including Business and Professions Code section 12027 (allowing the director of agriculture to enact certain regulations); Business and Professions Code sections 12601, 12603, 12607, and 12609 (designed to protect consumers of commodities against deception in the labeling of net quantities); and Health and Safety Code sections 26850 and 26851 (providing for injunctive relief and civil penalties respectively for the sale of misbranded products).

CONTENTIONS

Appellants make the following contentions:

1. The trial court erred in holding that the People's amended complaint and Christensen's complaint in intervention were barred by res judicata;

2. The court erred in holding that California has no power to enforce the provisions of the Wholesome Meat Act by means of state statutes, regulations, and sanctions;

3. The judgment is in error insofar as it provides that the applicable California statutes impose an unreasonable burden on interstate commerce;

4. The court erred in denying the state the power to prevent unfair competition;

5. There was insufficient evidence adduced at trial to support the court's finding that Rath's products complied with the applicable federal standards;

6. The court erred in holding that California's off-sale procedures deny Rath due process of law;

7. The court erred in refusing to enter judgment on the special defense of res judicata and in proceeding to trial on any other matter;

8. The court erred in granting Rath equitable relief.

DISCUSSION

As will become apparent, the resolution of many, if not all, of the issues raised by appellants requires an examination of the applicable federal law and of several decisions of the federal courts pertaining to the preemption of California's net weight labeling requirements by that law.

The federal labeling requirement imposed by the Wholesome Meat Act is contained in 21 United States Code section 607(b), which states: "All . . . meat and meat food products inspected at any establishment under the authority of this subchapter . . . shall at the time they leave the

establishment bear . . . the information required under paragraph (n) of section 601 of this title."

The paragraph in section 601 referred to provides that a packaged meat food product is misbranded unless its label shows "an accurate statement of the quantity of contents in terms of weight . . . *provided,* That . . . reasonable variations may be permitted . . . by regulations prescribed by the Secretary [of Agriculture] . . . ." (21 U.S.C. § 601(n)(5); italics in original.)

The regulations promulgated by the Secretary of Agriculture provide that "[t]he statement as it is shown on a label shall not be false or misleading and shall express an accurate statement of the quantity of contents of the container exclusive of wrappers and packing substances. Reasonable variations caused by loss or gain of moisture during the course of good distribution practices or by unavoidable deviations in good manufacturing practice will be recognized. Variations from stated quantity of contents shall not be unreasonably large." (9 C.F.R. § 317.2(h)(2) (1977).)

Further, the Wholesome Meat Act explicitly prohibits any state from imposing "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those made" pursuant to the act, although the states may, consistent with the requirements of the act, "exercise concurrent jurisdiction with the Secretary" over packaged meat articles after they leave federally inspected establishments. (21 U.S.C. § 678.)

*Rath Packing Company* v. *Becker, supra,* 357 F.Supp. 529, which the trial court determined to be res judicata with respect to the present case, was an action instituted by Rath in the federal district court to enjoin appellant Becker, and another not a party here, from ordering Rath's meat products off sale under the authority of Business and Professions Code section 12211 (fn. 6, *ante*) and article 5 (fn. 7, *ante*); appellant Christensen was an intervener in the action.

The federal district court's opinion in *Becker* has three main points which are relevant here.

First, the court held that the provisions of the Wholesome Meat Act apply not only when products leave federally inspected establishments but also throughout the meat processors' distribution system, including the retail level. (357 F.Supp. at p. 532.) Thus, the district court rejected

Rath's argument that once a package has been passed by a federal inspector no one has authority to see that it meets appropriate standards at a later point. This holding of the federal district court was explicitly affirmed by the Ninth Circuit. (*Rath Packing Co.* v. *Becker, supra,* 530 F.2d 1295, 1315.)

Second, the federal district court found that Business and Professions Code section 12211 and article 5 imposed a net weight labeling requirement "different" from that provided under the federal act, and therefore enjoined their enforcement. (357 F.Supp. at pp. 533-536.) This holding was also approved by the Ninth Circuit. (530 F.2d at pp. 1312-1314.)

Third, the federal district court in *Becker* recognized that the Wholesome Meat Act grants to the states concurrent jurisdiction to enforce the requirements of the federal statute when regulated products are outside of federally inspected establishments. (357 F.Supp. at p. 533.) Again, the Ninth Circuit affirmed, stating: "Our holding does not diminish the Congressional grant in [21 U.S.C.] § 678 to the States of enforcement jurisdiction concurrent with the Secretary over misbranded articles outside federally inspected establishments, *if the States do not impose labeling and other requirements 'in addition to or different than' the federal standards when exercising their concurrent jurisdiction.* We have merely held that California cannot exercise its concurrent jurisdiction through the particular standards established by § 12211 and Art. 5. California is free to enact other statutes and regulations which do not offend § 678." (530 F.2d at p. 1314; italics in original.)

In *Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, the United States Supreme Court, in addressing the preemption issue raised by Rath in the federal district court, held that any California law which regulates the content or accuracy of net weight labeling of Rath's bacon is a labeling requirement within the scope of the Wholesome Meat Act, and therefore cannot be "in addition to, or different than" the labeling demands of that act. (430 U.S. at pp. 530-532 [51 L.Ed.2d at pp. 616-618].) As stated by the court: "Thus, the state law's requirement—that the label accurately state the net weight, with implicit allowance only for reasonable manufacturing variations—is 'different than' the federal requirement, which permits manufacturing deviations *and* variations caused by moisture loss during good distribution practice. . . . [¶] We therefore conclude that with respect to Rath's packaged bacon, § 12211 and Art. 5 are

pre-empted by federal law." (430 U.S. at pp. 531-532 [51 L.Ed.2d at p. 618]; italics in original.)[9]

### 1. *The Res Judicata Effect of the Federal Decisions*

■ The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition. (*Stoll* v. *Gottlieb* (1938) 305 U.S. 165, 170 [83 L.Ed. 104, 107-108, 59 S.Ct. 134].) A federal court judgment has the same effect in California courts as it has in the federal courts. (*Martin* v. *Martin* (1970) 2 Cal.3d 752, 761 [87 Cal.Rptr. 526, 470 P.2d 662].)

■ ■■■ Rath, Christensen, and Becker were parties to the federal action and are parties hereto. The federal action was clearly a determination on the merits. Thus, the federal court opinions rendered in the United States District Court, the Ninth Circuit Court of Appeals, and the United States Supreme Court are res judicata on the parties to this suit.[10] (*Lawlor* v. *National Screen Service* (1955) 349 U.S. 322, 326 [99 L.Ed. 1122, 1126-1127, 75 S.Ct. 865]; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].)

The principal question presented on this appeal is whether the trial court erred in holding that appellants' complaints were barred by the res

---

[9] In a footnote, the Supreme Court noted that California's use of a statistically estimated average weight of the lot to determine label accuracy implicitly recognizes manufacturing variations since individual deviations around the packer's target weight are allowed to cancel each other out. (*Jones* v. *Rath Packing Co., supra*, 430 U.S. 519, 531, fn. 18 [51 L.Ed.2d 604, 617].) The statistical sampling technique used by California with respect to Rath's bacon made no allowance for moisture loss, however. (*Ibid.*)

[10] The People point out that the State of California was not a named party in the federal action, and argue thereby that the federal decisions are binding only on the individual state officials named therein. But with the exception of certain tax collection cases (see, e.g., *People* v. *Birch Securities Co.* (1948) 86 Cal.App.2d 703, 712-714 [196 P.2d 143]) and cases involving title to federal land (see, e.g., *United States* v. *Zager* (E.D.Wis. 1968) 280 F.Supp. 877, 879), the general rule appears to be that an action in the federal courts against one governmental official will bind all other officials of the same government (see *Sunshine Coal Co.* v. *Adkins* (1940) 310 U.S. 381, 402-403 [84 L.Ed. 1263, 1275-1277, 60 S.Ct. 907]; *Consumer Party* v. *Tucker* (E.D.Pa. 1973) 364 F.Supp. 594, 601-602). Furthermore, the People's argument was expressly rejected in a related case from the Fourth District, *People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 67 [118 Cal.Rptr. 438], wherein the court noted: ". . . Rath in . . . the federal action sought injunctive relief against *all* those state officials empowered to enforce state statutes regulating meat package misbranding—no more sweeping injunctive claim against the 'People' or the state could have been made." (Italics in original.) (See also *Johnson* v. *Fontana County F.P. Dist.* (1940) 15 Cal.2d 380, 390-391 [101 P.2d 1092]; *Bernhard* v. *Wall* (1921) 184 Cal. 612, 623-624 [194 P. 1040].)

judicata effect of the federal action instituted by Rath. Appellants contend that such holding was in error to the extent that it applied the federal district court's decision in *Rath Packing Company* v. *Becker, supra,* 357 F.Supp. 529, to bar the enforcement of any California laws other than Business and Professions Code section 12211 and the article 5 regulation.[11]

There is no question but that the only provisions of California law actually considered by the federal district court were Business and Professions Code section 12211 and article 5. As noted by the Fourth District, "The holding in *Becker* was narrowly drawn: the federal court ruled only that section 12211 was preempted by the federal statute, and that article 5 of the California Administrative Code was likewise invalid but *only insofar as it reflected the provisions of section 12211.*" (*People* v. *Rath Packing Co., supra,* 44 Cal.App.3d 56, 68; italics in original.)

But even if the res judicata effect of the federal district court's decision in *Becker* is limited, it is clear that the holding of the United States Supreme Court in *Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, 530-532 [51 L.Ed.2d 604, 616-618], that the states may not enact labeling requirements which are "in addition to, or different than" those prescribed by the Wholesome Meat Act, is now stare decisis and binding upon the courts of this state. (See *Calderon* v. *City of Los Angeles* (1971) 4 Cal.3d 251, 264 [93 Cal.Rptr. 361, 481 P.2d 489]; *People* v. *Cummings* (1974) 43 Cal.App.3d 1008, 1019 [118 Cal.Rptr. 289].) ■ We therefore conclude that the trial court was correct in holding that the various statutes and regulations which appellants sought to enforce against Rath were preempted by federal law when applied to Rath's bacon in a manner which failed to fully recognize the reasonable variations in net weight permitted by the federal regulation (9 C.F.R. § 317.2(h)(2) (1977)).

■ In this regard, we note that the present language of one of the statutes declared by the trial court to be preempted, Health and Safety Code section 26551 (fn. 3, *ante*), expressly permits "reasonable variations" from the statute's requirement that a food package contain "[a]n accurate statement of the quantity of the contents, in terms of weight,

[11]Appellants accept the res judicata effect of the federal district court's decision with respect to Business and Professions Code section 12211 and article 5; they also acknowledge the Ninth Circuit's supplemental determination that article 5.1 (fn. 7, *ante*) and Business and Professions Code section 12607 (fn. 8, *ante*), as applied through article 5.1, are both preempted by federal law. (*Rath Packing Co.* v. *Becker, supra,* 530 F.2d 1295, 1316-1317.)

measure or numerical count."[12] Furthermore, the regulations promulgated for the enforcement of division 21 of the Health and Safety Code, of which section 26551 is a part, provide that variations from the stated weight or measure on a food package shall be allowed when caused ". . . by ordinary and customary exposure, after the food is introduced into intrastate commerce to conditions which normally occur in good distribution practice . . ." or by ". . . unavoidable deviations in weighing, measuring, or counting individual packages which occur in good packing practice." (Cal. Admin. Code, tit. 17, ch. 5, subch. 2, art. 3, § 10805, subd. (k).) Keeping in mind the cardinal rule of construction that statutes and regulations should be construed so as to render them valid (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669]; *Bryant* v. *Swoap* (1975) 48 Cal.App.3d 431, 439 [121 Cal.Rptr. 867]), we conclude that the current version of Health and Safety Code section 26551, as applied by the California Administrative Code provision referred to, is fully consistent with the applicable federal law. Thus, the appropriate state officials may, in the future, employ section 26551 to enforce the federal labeling standards discussed above.[13] It is clear from a review of the pleadings and record below, however, that appellants have heretofore refused to interpret any provision of California law as permitting variation from stated weight when it is the result of moisture loss during the course of good distribution practice.

### 2. *Enforcement of the Federal Wholesome Meat Act by Means of State Procedures and Sanctions*

■ We agree with appellants' contention that the judgment is in error insofar as it prohibits the use of a state "sanction, penalty or remedy" which is not identical to those provided for under federal law. In *Rath Packing Co.* v. *Becker, supra,* 530 F.2d 1295, 1314, the Ninth Circuit, as noted previously, specifically recognized the concurrent jurisdiction over the regulation of meat food products granted to the states by 21 United

[12]Rath's contention that Health and Safety Code section 26551 is made inapplicable to meat food products by Health and Safety Code section 26430 is incorrect insofar as the present language of the statutes is concerned; section 26430 is explicitly limited in its application to division 21, chapter 4, article 2 of the Health and Safety Code, while section 26551 is found in division 21, chapter 5, article 4 of that code.

[13]We mention Health and Safety Code section 26551 only by way of example and do not mean to imply thereby that appellants may not hereinafter employ other statutes, including many of those mentioned above, in the enforcement of net weight labeling standards with respect to meat food products *provided* such statutes and their implementing regulations are applied so as to give full recognition to the two types of weight variations permitted by federal law.

States Code section 678. In so doing, the court approved language from the brief submitted by Becker and Christensen stating that Congress had, through the noted code section, " 'sanctioned the adoption by the states of laws (statutes and regulations) which impose the same *standard* required by the Wholesome Meat Act . . . and which are enforced by means of state enforcement procedures.' " (*Ibid.*; italics in original.) To hold otherwise would render the concurrent enforcement power of the states meaningless since the states obviously lack the ability to pursue the same remedies that are available to the federal government.

In this connection, the judgment provision stating that California may not use a "test" for determining mislabeling or misbranding which is not "identical" to any tests provided for under the federal act must also be modified so as to reflect the Supreme Court's disapproval of "anything in the opinions below that suggests that States may not use valid statistical sampling techniques, including reliance on lot average weights, to police compliance with federal and valid state net-weight labeling laws." (*Jones v. Rath Packing Co., supra,* 430 U.S. 519, 531, fn. 18 [51 L.Ed.2d 604, 617].)

### 3. *Impact on Interstate Commerce*

█ We also find merit in appellants' contention that the judgment is erroneous insofar as it prohibits California's regulation of net weight labeling requirements on the ground that it is an unreasonable burden on interstate commerce. Our holding in this regard is limited, of course, to such regulation as is consistent with the applicable federal law discussed above. As noted by the court in *General Mills, Inc.* v. *Jones* (9th Cir. 1975) 530 F.2d 1317, 1322 (a companion case to the federal action discussed herein which dealt with the application of California's net weight labeling requirements to the sale of packaged flour): "The contention that California's regulatory scheme is rendered invalid by the Commerce Clause *alone* is not substantial. The regulation of weights and measures has historically been, and is now, a matter of local concern and within the competent exercise of the police power of the States. . . . Any holding that the enforcement of state weights and measures regulations by California unreasonably burdens interstate commerce is foreclosed by the Supreme Court's decision in *Sligh* v. *Kirkwood,* 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915), in which the Court held that a Florida law which made the delivery of immature citrus fruit for shipment in interstate commerce a criminal offense was a valid exercise of Florida's police

power and did not unreasonably burden interstate commerce." (Italics in original.)[14]

## 4. *Prevention of Unfair Competition*

■ Appellants' contention that the judgment below improperly denies the state the power to prevent unfair competition between Rath and its competitors is without merit. The judgment only interferes with California's power to prevent unfair competition to the extent it is used in a manner inconsistent with the dictates of the Wholesome Meat Act and the decisions interpreting that act discussed above.

## 5. *Sufficiency of the Evidence*

■ We turn now to appellants' contention that the evidence presented at trial was insufficient to support the judgment.

Appellants' argument on this point is based primarily upon the assertion that Rath failed to sustain its burden of proof on the cross-complaint in that there was no showing that Rath's bacon was marketed in conformance with the applicable provisions of the Wholesome Meat Act. More particularly, appellants contend that Rath failed to prove: (1) that its bacon was accurately labeled as to weight upon leaving Rath's plants (subject to reasonable manufacturing variations), as is required by title 21, United States Code section 607(b) and section 601(n) (see *Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, 528-529 [51 L.Ed.2d 604, 615-616]); and (2) that its bacon was produced in conformance with a federal regulation (9 C.F.R. § 319.104(b) (1977)) which provides that the weight of a smoked pork product may "not exceed the weight of the fresh uncured article."[15]

It may be sufficient to answer appellants' contention by reference to the federal action, wherein the Ninth Circuit, concerned with the very same bacon which was the subject matter of the instant litigation, stated: "There is no evidence that Rath has violated federal weight standards in any way." (*Rath Packing Co.* v. *Becker, supra,* 530 F.2d 1295, 1299; see also *Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, 528 [51 L.Ed.2d 604, 615-616].) ■ Although the record is somewhat uncertain as to the

[14]This holding went unchallenged in the Supreme Court. (*Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, 525, fn. 8 [51 L.Ed.2d 604, 613].)

[15]Actually, the cured pork product may contain up to 10 percent added water provided it is labeled "Water Added." (9 C.F.R. § 319.104(d) (1977).)

tenor of the defense put forth by appellants in the federal action, the doctrine of res judicata operates to bind them not only as to every issue which was actually raised in those proceedings, but also as to every issue which might have been raised. (*Sea-Land Services, Inc.* v. *Gaudet* (1974) 414 U.S. 573, 578-579 [39 L.Ed.2d 9, 17-18, 94 S.Ct. 806]; *Flynn* v. *State Bd. of Chiropractic Examiners* (9th Cir. 1969) 418 F.2d 668.)

■ But even assuming that the federal determination of Rath's compliance with the federal act is not dispositive of the arguments raised here, we conclude that appellants' contention as to the sufficiency of the evidence must fail.

On the issue of Rath's compliance with net weight labeling requirements, Chester Jaensen, Rath's plant manager, testified that, on the average, packaged bacon leaving his establishment weighed two-sixteenths of an ounce over stated net content. The statistical sampling technique from which this average was derived has been approved by the United States Department of Agriculture.[16] (See *Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, 528, fn. 13 [51 L.Ed.2d 604, 616].)

To counter this testimony, appellants rely upon an analysis of Rath's quality control charts for the period of September 1971 to January 1972 performed by Vashek Cervinka, a statistician employed by the California Department of Agriculture. The statistics compiled by Cervinka were arranged into tables showing percentages of underweight Rath bacon packages at the time of packing, after four days' storage, and after eight days' storage. The significance of the breakdown is that, on the average, Rath's bacon remains in the plant four days before shipment and can

---

[16]Appellants contend that Jaensen's statistics were defective since they were based upon a "dry tare" method of analysis whereby net weight is determined by subtracting the weight of the dry packaging material from the total weight of the packaged product. They argue that the "wet tare" method employed by California officials, in which content weight is determined by including in the weight of the packaging material any grease or moisture which has been absorbed into it, produces results which more accurately reflect the true weight of the *usable* product. Even appellants acknowledge, however, that the federal inspectors also employ a dry tare method of weight analysis. (See *Rath Packing Co.* v. *Becker, supra,* 530 F.2d 1295, 1299.) Furthermore, although the Supreme Court recognized that it is not feasible for field inspectors to use the dry tare method, it also suggested that the state's use of the wet tare might be considered a contributing factor to its failure to allow weight variations resulting from loss of moisture during good distribution practice. (*Jones* v. *Rath Packing Co., supra,* 430 U.S. 519, 527, fn. 10 [51 L.Ed.2d 604, 615].) While the federal decisions clearly do not mandate the use of a dry tare method of weight determination (see *Rath Packing Co.* v. *Becker, supra,* 530 F.2d at p. 1299, fn. 4), they nevertheless undermine appellants' attack upon the statistical sampling technique employed by Rath.

remain up to eight or nine days. According to Cervinka's analysis, 70.19 percent of packages were at least one-sixteenth of an ounce underweight after four days' storage during one week in September of 1971, while 84.61 percent of those same packages were similarly underweight after eight days' storage.

We note first that the germaneness of Cervinka's tables for the eighth day of storage is reduced by the admission that the figures contained therein actually represent weight loss occurring during four days' storage in the packing plant and then four days' storage out of the plant; it is only accurate weight at the point of shipment that is relevant here.[17] Secondly, the significance of the entire analysis performed by Cervinka is lessened by the fact that it concentrates solely upon the percentage of underweight packages without recognizing that it is only the *average* of *all* packages leaving Rath's plants which must be at stated weight, thus allowing for reasonable manufacturing variations. According to Cervinka's own figures for the total period of September 1971 to January 1972, only 47.61 percent of Rath's bacon was one-sixteenth of an ounce or more underweight after four days' storage.

In any event, it is well established that "[w]hen a judgment is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the trial court's findings. [Citations.] Where the evidence is in conflict, an appellate court will not disturb the findings of the trial court. Indeed, there is a presumption in favor of the facts as found by the trial court. [Citations.]" (*Wittenbach* v. *Ryan* (1976) 63 Cal.App.3d 712, 716 [134 Cal.Rptr. 47]; see also *Arnold* v. *Browne* (1972) 27 Cal.App.3d 386, 393 [103 Cal.Rptr. 775].) As there was a conflict in the testimony presented at trial on the issue of Rath's compliance with federal labeling standards at the time of shipment, we cannot substitute our judgment for that of the trier of fact.[18]

---

[17]Rath's testing showed that the rate of moisture loss averages about .25/16 ounce per day under holding conditions at the packing plant, while the average loss was .4/16 ounce per day under retail conditions.

[18]The fact that there was some evidence that two of Rath's competitors apparently had significantly less problems with short-weighted bacon during the same period, while certainly relevant to the question of what are good manufacturing and distribution practices, was not dispositive of the question of Rath's compliance with the federal standards since those competitors may have been voluntarily exceeding the federal requirements.

■ Appellants' contention that relief should have been withheld from Rath because of its alleged failure to comply with federal restrictions on the amount of finished product which may be obtained from the uncured article evinces a misunderstanding of Rath's burden of proof. A party has the burden of proof only "as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) In its cross-complaint, Rath alleged only that its products were in conformance with federal net weight labeling requirements—not that it had met all federal requirements pertaining to the production of bacon. In addition, Becker himself testified that his inspectors were concerned solely with the weight of Rath's bacon when they ordered it off sale, not its quality. We thus conclude that Rath's compliance or noncompliance with the federal regulation concerning the relationship between the weight of the finished and unfinished product was not determinative of Rath's right to seek injunctive or declaratory relief against the state's off-sale procedure.[19]

Appellants also contend that virtually all of the court's findings of fact were unsupported by the evidence. As appellants have limited their argument to two specific findings, we do likewise.

Appellants first contend that there was insufficient evidence to support the court's finding that the United States Department of Agriculture "actively enforces" the provisions of the Wholesome Meat Act. Appellants argue that, to the contrary, the evidence disclosed that a seriously undermanned USDA compliance staff relies heavily upon state weights and measures officials to insure that federal net weight labeling requirements are being met. Rath's Jaensen, however, testified that USDA inspectors were present at Rath's plants on a daily basis and that they performed periodic checks on Rath's weighing procedure. In any event, the fact that there was some evidence indicating that the USDA depends upon state officials to supplement its own enforcement staff, particularly at the retail level, does not defeat Rath's claim for relief. As noted by the federal district court: "That the evidence here shows the United States Department of Agriculture may have abdicated some of its protective duty, does not justify the application of a *different* labeling requirement by the state of California and its officers." (*Rath Packing Company* v. *Becker, supra,* 357 F.Supp. 529, 535; italics in original.) Since California's

---

[19]For the reasons discussed above, the trial court correctly sustained Rath's objection to the introduction of records designed to show that Rath was violating the federal regulation mandating the amount of cured product which may be obtained from the finished article.

right to concurrently enforce the provisions of the Wholesome Meat Act has now been firmly established (*Rath Packing Co.* v. *Becker, supra,* 530 F.2d 1295, 1314), appellants cannot have suffered any prejudice from the questioned finding.

Appellants' second attack is upon the finding that Rath's bacon was, on the average, two-sixteenths of an ounce overweight at the time of shipment. The discussion above as to the sufficiency of the evidence establishing Rath's compliance with the federal act adequately disposes of appellants' arguments on this point. In fact, Chester Jaensen's testimony regarding the average overpack of Rath's bacon could, by itself, have been sufficient to support the court's finding. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; 6 Witkin, Cal. Procedure, *supra,* Appeal, § 248, p. 4240.)

Appellants lastly argue that the judgment is overbroad in that it purports to protect all of Rath's meat food products when the evidence presented at trial pertained only to bacon. It is clear, however, that the preemptive effect of the federal act applies to all meat products, not just bacon. We note in this regard that the federal district court worded its judgment so as to cover "*articles* prepared and marketed by . . . [Rath] under United States Department of Agriculture's inspection in accordance with the requirements of the federal Wholesome Meat Act . . . ." (*Rath Packing Company* v. *Becker, supra,* 357 F.Supp. 529, 536; italics added.) We find no error.

### 6. *California's Off-sale Procedure*

We next consider appellants' challenge to the portion of the judgment which prohibits the use of California's off-sale procedure on the ground that it constitutes a violation of due process requirements. That procedure, which is authorized by Business and Professions Code section 12211 (fn. 6, *ante*), empowers weights and measures officials to order the removal from sale of falsely labeled packages, without provision for notice or hearing, until the particular defect is cured.

It has been stated that the fundamental requirement of the concept of due process is " 'the opportunity to be heard.' " (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 267 [25 L.Ed.2d 287, 299, 90 S.Ct. 1011].) It is only under the most unusual circumstances that a person can be even temporarily deprived of his property without opportunity for a prior hearing. (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 80-82, 90-92 [32 L.Ed.2d 556, 569-571,

575-577, 92 S.Ct. 1983]; *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 68 [145 Cal.Rptr. 368, 577 P.2d 188].)

But, in general, the use of off-sale orders to police labeling and other protective measures has received the approval of the courts. In rejecting the claim that California's off-sale procedure violates the dictates of due process, the court in *General Mills, Inc.* v. *Jones, supra*, 530 F.2d 1317, 1323, stated: "[T]he millers' contention that the ordering of their flour off sale by Jones without a prior hearing violates Fourteenth Amendment due process is without substance. In *Ewing* v. *Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599-600, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), the Court held that the seizure without a prior hearing of allegedly misbranded articles under Section 304(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. § 334(a), did not violate due process. This holding was specifically approved by the Court in *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 339, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), as one directed to those special circumstances in which the important governmental or general public interest permits postponement of notice and an opportunity for a hearing without the deprivation of due process. . . . Since California has adequate procedures by which the propriety of off-sale orders may be tested after the fact, by petition for writ of mandamus or action for injunction under state law, this contention of the millers is foreclosed and without substance."[20]

We conclude, however, that the highly perishable nature of bacon renders the present case distinguishable from those concerning the seizure or ordering off sale of more stable products, such as the misbranded drugs involved in *Ewing* or the short-weighted flour in *General Mills.*

In the *Ewing* case, the Supreme Court noted that the administrative agency's determination that a certain drug was misleadingly labeled, and thus seizable under the federal act, was merely a statutory prerequisite to the bringing of a lawsuit by the government, and that once the libels were filed the owner of the drugs would have the benefit of a full hearing before a court. (*Ewing* v. *Mytinger & Casselberry, supra*, 339 U.S. 594, 598 [94 L.Ed. 1088, 1093].) In holding that no prior hearing was therefore required before the allegedly misbranded drugs could be seized, the court stated: "Congress weighed the potential injury to the public from misbranded articles against the injury to the purveyor of the article from

---

[20]The millers did not seek review of this holding in the Supreme Court. (*Jones* v. *Rath Packing Co., supra*, 430 U.S. 519, 525, fn. 8 [51 L.Ed.2d 604, 613].)

a *temporary interference* with its distribution and decided in favor of the speedy, preventive device of multiple seizures." (*Id.,* at p. 601 [94 L.Ed. at p. 1095]; italics added.)

The ordering off sale of Rath's bacon, however, constitutes more than a mere "temporary interference" with its distribution in most cases. As found by the trial court, and supported by substantial evidence, "the general consequence of an off sale order is that the meat food product is returned by the retail store to Rath for credit and then is destroyed by Rath because the intervening time has made the product unsaleable; the off sale order thus constitutes a deprivation of property and property rights."[21] Allowing Rath to seek redress in the courts following the issuance of an off-sale order thus appears to be an empty right since the relatively brief shelf life of its bacon is likely to have rendered the product worthless before judicial review can be obtained.[22] Due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." (*Armstrong* v. *Manzo* (1965) 380 U.S. 545, 552 [14 L.Ed.2d 62, 66, 85 S.Ct. 1187].)

In concluding that California's present off-sale procedure denies Rath due process, we have balanced the public interest sought to be protected, i.e., the right of the consumer to be free from misbranded goods, against the deprivation suffered by Rath. (See *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 209 [124 Cal.Rptr. 14, 539 P.2d 774].) The evidence produced at trial revealed that on at least three occasions the failure of a weights and measures official to properly follow the prescribed testing procedure resulted in Rath's bacon being ordered off sale when it should not have been, even under the incorrect accurate weight at time of sale standard then being used. It may be anticipated that many more such errors will occur when appellants begin to enforce the more complicated federal standard. Further, the record indicates that Rath bacon which was actually underweight was only so in miniscule amounts, rarely exceeding a few fractions of an ounce. We point out, however, that if the

[21]Appellants do not appear to take issue with the proposition that the ordering off sale of Rath's bacon may be regarded as the taking of a substantial property interest. In any event, argument to the contrary is untenable in view of the evidence produced at trial establishing that some of the bacon ordered off sale by appellants and their agents is eventually sold to a rendering plant for less than one cent a pound.

[22]Appellants point out that the shortest "code" or "pull" date for Rath bacon is 25 days and argue that this affords Rath ample opportunity to obtain timely redress in the courts if an off-sale order has been improperly issued. This argument, however, assumes without basis that such orders always issue at or near the beginning of the product's predetermined shelf life.

governmental interest involved here was the protection of the public from the consumption of adulterated, and not merely short-weighted, food, we would have to strike the balance in favor of that interest, irrespective of the fact that the product ordered off sale is highly perishable. (*North American Storage Co.* v. *Chicago* (1908) 211 U.S. 306 [53 L.Ed. 195, 29 S.Ct. 101].)

The question remaining is what type of notice and hearing is required here to satisfy the requirements of due process. The court below held that Rath's products could not be ordered off sale unless Rath is provided with notice "as to facts on which such sanction is based and a fair hearing before a fair tribunal at some reasonable time to determine the correctness or propriety of such sanction in any particular instance . . . ." In another part of its judgment, the trial court further held that appellants could not order Rath's bacon off sale on the ground that the net weight stated thereon was not accurate at a time after the product has left Rath's plant "except by action brought in court."

To the extent that these holdings are interpreted as requiring a full evidentiary hearing prior to the ordering off sale of allegedly short-weighted bacon, we conclude that the court went too far. Supreme Court decisions emphasize that the hearing requirement of due process is a flexible one. As was stated in *Cafeteria Workers* v. *McElroy* (1961) 367 U.S. 886, 895 [6 L.Ed.2d 1230, 1236, 81 S.Ct. 1743]: ▮ "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . . [¶] [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

The flexible nature of the hearing requirement is especially apparent in recent opinions of the high court. (See *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 209.) For example, in *Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729], the Supreme Court held that public school students have a property interest in their education and that they therefore are entitled to a notice and hearing before being suspended or expelled from school (*id.,* at pp. 572-576 [42 L.Ed.2d at pp. 733-736]); when the suspension is short, however, the required hearing need only consist of an informal discussion between the student and disciplinarian which affords the student an opportunity to explain his version of the pertinent facts (*id.,* at pp. 581-582 [42 L.Ed.2d at pp. 738-739]).

In *Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633], a plurality of the court approved a procedure designed for the purpose of determining cause for the dismissal of a federal employee, which procedure consisted of providing the employee with "30 days' advance written notice of the reasons for his proposed discharge and the materials on which the notice is based," affording the employee an opportunity "to respond to the charges both orally and in writing," and, upon request, granting the employee "an opportunity to appear personally before the official having the authority to make or recommend the final decision." (*Id.,* at p. 170 [40 L.Ed.2d at p. 42].)

In *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, a case involving the dismissal of a state employee, our Supreme Court analyzed the current trend in due process decisions and concluded that while a full, trial-type evidentiary hearing was not required prior to the initiation of the punitive action, some form of notice and opportunity to respond to the charges would have to be provided before the disciplinary action finally took effect. (*Id.,* at p. 215.)

From the above, it is clear that due process does not require a full evidentiary hearing before underweight bacon can be ordered off sale; to impose such a requirement would unduly hamper the legitimate enforcement efforts of weights and measures officials. But what is required here? While our lack of certain factual information prevents us from providing the parties with a detailed discussion of what due process demands in the present situation, we feel constrained to address the issue in at least general terms.

In line with the flexible approach taken to the due process question in cases such as *Goss, Arnett,* and *Skelly,* it would seem that an immediate detention of Rath bacon found to be underweight would be permissible *provided* Rath is thereafter given notice of the action taken,[23] including therewith a copy of the inspection report upon which the charge is based, and is then afforded an opportunity to dispute the charge before the responsible enforcement agency. To be effective, of course, the notice and opportunity for a hearing would have to take place soon

_____

[23]Appellants submit that they would face great difficulties if compelled to give notice directly to the meat packer given that much of the meat food products sold in California are packed out of state. The required notice, however, need only be given in a manner reasonably calculated to reach the packer. (*Estate of Lacy* (1975) 54 Cal.App.3d 172, 187 [126 Cal.Rptr. 432].) As such, service of the notice upon the packer's local sales representative or possibly even the retailer as agent for the packer should be constitutionally sufficient.

enough after the initial action that the product will not have substantially depreciated in value should it be determined that the detention or off-sale order was erroneously issued. A procedure such as this should serve to insure the accuracy of the process used to determine Rath's compliance with net weight labeling requirements without diminishing the ability of weights and measures officials to protect consumers from the sale of falsely labeled products.

### 7. *Failure to Enter Judgment on Special Defense*

■ Appellants' contention that the trial court erred in refusing to enter a judgment on the special defense of res judicata and in proceeding to the trial of any other matter raises several questions related to the application of Code of Civil Procedure section 597. So far as is here pertinent, that section reads as follows: "When the answer pleads that the action is barred by . . . a prior judgment . . . the court may, upon the motion of either party, proceed to the trial of such special defense or defenses before the trial of any other issue in the case, and if the decision of the court . . . upon any special defense so tried . . . is in favor of the defendant pleading the same, *judgment for such defendant shall thereupon be entered and no trial of other issues in the action shall be had* unless such judgment shall be reversed on appeal or otherwise set aside or vacated . . . ." (Italics added.)

One practical exception to the above statutory provision, however, is that a separate judgment should not be entered upon a special defense which is not dispositive of the entire controversy. As stated in *Evans* v. *Horton* (1953) 115 Cal.App.2d 281, 287 [251 P.2d 1013]: "It is only when the decision on the trial of the special defense is that the entire action is barred by a prior judgment that the court is empowered to render judgment for the defendant who has pleaded the special defense. [Citations.] When . . . the court proceeds to try a special defense which does not constitute a bar to the entire action before the trial of any other issue, and the decision on such special defense is in favor of the defendant, the proper procedure is to make a minute order to that effect, proceed to the trial of the remaining issues, make findings of fact and conclusions of law on all issues, and render judgment accordingly. In such a case, the decision of the court on the special defense and all rulings on it may be reviewed on appeal from the judgment." (See also *Crofoot* v. *Crofoot* (1955) 132 Cal.App.2d 794, 798 [283 P.2d 283]; 4 Witkin, Cal. Procedure, *supra,* Trial, § 125, p. 2951.)

In the case at bench, the sustaining of Rath's res judicata defense as to the People's first amended complaint and Christensen's complaint in intervention was not determinative of the entire controversy before the court; Rath's cross-complaint against Becker, to which Christensen was granted leave to file an answer in intervention, presented issues going to the legality of Becker's off-sale orders which were not resolved in the federal action (e.g., the due process question). Therefore, as among Rath, Becker, and Christensen, the court correctly proceeded to a trial of the issues raised in the cross-complaint after it had decided the res judicata question in Rath's favor.

But as between Rath and the People a separate judgment should have been entered after the trial of the special defense pursuant to Code of Civil Procedure section 597 since the People were not a party to the cross-complaint. The People's claim of prejudice from the court's refusal to enter a separate judgment is, however, without substantial merit. ■ The provision in section 597 for the entry of a judgment and the suspension of further proceedings following the sustaining of a special defense appears to have been designed primarily to protect a defendant against a needless trial rather than to insure the entry of an immediate judgment from which other parties can appeal. (See *Booth* v. *Bond* (1942) 56 Cal.App.2d 153, 156-157 [132 P.2d 520].) Furthermore, the People's right to seek review of the trial court's ruling on the res judicata issue raised by Rath's special defense has been fully preserved on this appeal from the judgment which was entered after the court's determination of the entire controversy before it. (*Evans* v. *Horton, supra,* 115 Cal.App.2d 281, 287.)[24]

Appellants additionally complain that the court erred in making findings of fact and conclusions of law related to the Code of Civil Procedure section 597 trial of Rath's special defense since that trial concerned only a question of law upon which no evidence was taken. As noted previously, however, it has been held that once the trial court has entered judgment following the trial of a special defense and the trial of other, unaffected matters, it should proceed to "make findings of fact and conclusions of law *on all issues* . . . ." (Italics added.) (*Evans* v. *Horton, supra*; see also *Crofoot* v. *Crofoot, supra,* 132 Cal.App.2d 794, 798; Cal.

---

[24]The above discussion applies equally to Christensen's claim of prejudice based on the court's failure to enter a separate judgment on his complaint in intervention. In addition, since Christensen became a party to Rath's cross-action through his answer in intervention, it was proper, as noted above, for the court to delay entry of the judgment on the complaint in intervention until the entire controversy between Rath and Christensen was resolved. (*Evans* v. *Horton, supra,* 115 Cal.App.2d 281, 287.)

Civil Procedure During Trial (Cont.Ed.Bar 1960) § 9.13, p. 213.) In any event, it certainly did no harm for the court to indicate the basis of its decision on the special defense in its findings and in the judgment. But as the People were prohibited from participating in the trial of the cross-complaint after the sustaining of Rath's special defense, we agree with their assertion that the People, to the extent they may be regarded as a separate party, must be excluded from any findings or provisions in the judgment which relate solely to Rath's action against Becker and Christensen (as intervener).

Appellants' argument that Rath "waived any right to findings and conclusions on the section 597 trial" by its failure to request the same within the period permitted by California Rules of Court, rule 232(b) (10 days after announcement of intended decision) appears spurious in light of the fact that Christensen also made a request for findings and conclusions. Further, it is difficult to see how appellants could be prejudiced by the court's decision to grant the request for findings and conclusions of law since their absence would have raised the presumption that the court found all facts necessary to support its judgment in favor of Rath. (*Block* v. *Laboratory Procedures, Inc.* (1970) 8 Cal.App.3d 1042, 1045 [87 Cal.Rptr. 778].)

8. *Granting of Equitable Relief*

Appellants' final contention is that declaratory and injunctive relief should have been withheld from Rath because of Rath's "unclean hands." While it appears that the trial court erred in taking the position that the equitable defense could not be raised at trial since it had not been asserted in the pleadings (see *Santoro* v. *Carbone* (1972) 22 Cal.App.3d 721, 731 [99 Cal.Rptr. 488]; cf. *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 533 [67 Cal.Rptr. 761, 439 P.2d 889]), the error was nonprejudicial. Appellants' charge of unclean hands was founded upon Rath's alleged violations of several provisions of the Wholesome Meat Act and parallel state legislation. As the trial court determined that Rath was in compliance with the applicable law, which determination, as discussed above, was supported by substantial evidence, there was no basis for the assertion of the clean hands doctrine as a bar to Rath's right to equitable relief.

## Disposition

The appeal in No. 42367 is dismissed.

The judgment in No. 43812 is modified as follows:

1. The references to sanctions, penalties, and remedies in judgment provision number four are stricken so that the paragraph reads: "Neither Christensen, Becker nor the People of the State of California can impose upon Rath's meat food products any requirement as to the label thereof showing an accurate statement of the quantity of the contents in terms of weight which is in addition to or different than the requirements of the Wholesome Meat Act of 1967."

2. Judgment provision number five is modified to read: "The First Amended Complaint and Complaint in Intervention herein seek monetary damages and injunctive relief based solely on California statutes, viz., Business and Professions Code §§ 12024, 12024.5, 12211, 17500, 17535 and 17536, Civil Code § 3369 and Health and Safety Code §§ 26550, 26551, 26850 and 26851. Each said statute imposes on Rath's meat food products a marketing, labeling and packaging requirement which is in addition to and different than the requirements of the Wholesome Meat Act of 1967 when such statutes are enforced in a manner which does not recognize the reasonable variations in net content weight permitted by that act and the federal regulations promulgated thereunder. Prosecution of each cause of action in said First Amended Complaint and Complaint in Intervention thus is barred by said prior federal judgment."

3. The language pertaining to tests, sanctions, penalties, and remedies in judgment provision number six is deleted so that it reads: "Any California statute or regulation applied to Rath's meat food products which contains a definition of mislabeling or misbranding which is not identical to such definitions as set forth in the Wholesome Meat Act of 1967 (and regulations thereunder), thereby imposes a marking, labeling or packaging requirement that is in addition to and different than the requirements imposed by the Wholesome Meat Act of 1967."

4. Subsection (e) of judgment provision number seven, prohibiting the use of a state sanction, penalty or remedy which is different than those provided for under federal law, is ordered stricken.

5. Subsection (f) of judgment provision number seven, pertaining to the due process requirements applicable to California's off-sale procedure, is modified to read: [Becker and Christensen and their successors and agents are permanently restrained and enjoined] "from ordering 'off sale,' or otherwise preventing the sale of, any perishable meat food product prepared by Rath under United States Department of Agriculture inspection in accordance with the Wholesome Meat Act of 1967 (and regulations thereunder) pursuant to any state procedure which does not provide Rath (or its representative) with notice of the charges and underlying facts said to justify such an order (including a copy of any inspection report) and then afford Rath an opportunity to dispute those charges, all within a sufficiently brief period of time following the taking of action that the product will not have substantially depreciated in value should it be determined that the off-sale order was erroneously issued."

6. Subsection (g) of judgment provision number seven, pertaining to the burden on interstate commerce posed by state enforcement of net weight labeling requirements, is ordered stricken.

7. Subsection (i) of judgment provision number seven is modified to read: [Becker and Christensen and their successors and agents are permanently restrained and enjoined] "from applying title 4, California Administrative Code, chapter 8, subchapter 2, article 5.1 to articles prepared by Rath under United States Department of Agriculture inspection in accordance with the requirements of the Wholesome Meat Act of 1967 (and regulations thereunder), and are further permanently restrained and enjoined from applying California Business and Professions Code sections 12024, 12024.5, 12601, 12603, 12607, and 12609 to such articles in any manner which does not recognize the reasonable variations in net content weight permitted by the federal act and the regulations promulgated thereunder."

8. Subsection (1) of judgment provision number seven, which prohibits the ordering off sale of Rath's bacon "except by action brought in court," is ordered stricken.

As so modified, the judgment is affirmed. Rath will recover from appellants one-half of its costs incurred on this appeal, with each party otherwise bearing its own costs.

Potter, Acting P. J., and Allport, J., concurred.